[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 15-14675; 15-14741

_____

D.C. Docket Nos. 1:14-cr-00123-TCB-RGV-1; 1:14-cr-00123-TCB-RGV-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KENNETH HORNER,
KIMBERLY HORNER,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(April 13, 2017)

Before TJOFLAT, HULL and O'MALLEY,[*] Circuit Judges.

O'MALLEY, Circuit Judge:

_____

[*]Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit, sitting by designation.

This case concerns Kenneth and Kimberly Horner's indictment, trial, and conviction for: (1) assisting in the preparation of a fraudulent corporate tax return, in violation of 26 U.S.C. § 7206(2) (two counts each, tax years 2007 and 2008); and (2) filing a false individual income tax return, in violation of 26 U.S.C. § 7206(1) (also two counts each, tax years 2007 and 2008). The Horners appeal their convictions on several grounds. After review of the record and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.    Factual Background

At all relevant times, the Horners owned and operated Topcat Towing and Recovery, Inc. ("Topcat"), an S-corporation[1] in Lithonia, Georgia. The Horners were Topcat's only owners, with Mrs. Horner owning 51% of the company and Mr. Horner owning the other 49%.

Topcat required customers to pay in cash for a number of its services, including vehicle retrieval from impound and abandoned car auctions. From 2005 to 2008, the Horners deposited approximately $3 million in checks and $2.8 million in cash into several business accounts with Bank of America and Bank of

---

[1] For federal tax purposes, an S-corporation "passes through" its income, losses, deductions, and credits directly to its shareholders. 26 U.S.C. §§ 1361, 1363, 1366. The income is thus taxed only once, instead of twice; in a more typical corporate arrangement, the corporation itself is taxed on its receipts in addition to the shareholders being taxed when profits are paid out in turn. Nevertheless, an S-corporation must still file a Form 1120S tax return for record-keeping and consistency.

North Georgia.  In that same time period, the Horners deposited nearly $1.6 million in cash into their personal accounts.  For 2007 and 2008 in particular, those cash deposits totaled $380,883 and $522,026, respectively.

The Horners hired H&R Block to prepare both their personal tax returns and Topcat's corporate tax returns.  They did not, however, tell H&R Block about any of the aforementioned cash deposits into their personal accounts.  On their finalized tax returns for 2005 through 2008, the Horners did not report any of the personal cash deposits as taxable income.

Internal Revenue Service ("IRS") investigators concluded that these personal cash deposits—not readily explainable as loans, gifts, or inheritance— were actually diverted Topcat receipts.  If true, the Horners not only underreported Topcat's income, but also their own income, as any Topcat receipts would eventually have passed through to the Horners as owners.  The Horners were indicted by a grand jury for assisting in the preparation of a fraudulent corporate tax return and for filing a false individual income tax return (two charges each, for tax years 2007 and 2008).  No charges were brought for 2005 or 2006.

## B.    Trial, Verdict, and Sentencing

After a jury trial, the Horners were found guilty on all counts and sentenced to 18 months imprisonment, three years of supervised release, as well as $144,455 in restitution payment to the IRS.  Of particular relevance to this appeal, over the

3

course of trial: (1) the Horners unsuccessfully filed multiple motions in limine to exclude certain evidence; (2) the government elicited testimony from IRS Agent Rosalyn Owens on the Horners' tax due; and (3) the Horners unsuccessfully requested supplemental jury instructions.

First, the Horners filed motions in limine to exclude evidence that they "structured" their cash deposits to avoid triggering bank reporting requirements, as well as evidence that they filed false tax returns for 2005 and 2006. The court denied those motions. Regarding structuring, the United States Department of the Treasury requires banks to file a Currency Transaction Report ("CTR") for any cash transaction larger than $10,000. The government uses these CTRs to help maintain the transparency of the transaction and also the integrity of the banking system. Structuring cash deposits "for the purpose of evading the reporting requirements"—for example, making three $9,000 deposits over time instead of a single $27,000 deposit—is a federal crime. 31 U.S.C. § 5324(a).

According to the government, the deposits into the Horners' and Topcat's bank accounts showed signs of structuring. For example, on April 12, 2006, the Horners made two deposits totaling more than $10,000—one for $9,800 into a personal bank account and one for $3,250 into a business account. From 2005 to 2008, the Horners did not make a single cash deposit of over $10,000. Instead, the Horners made 177 cash deposits between $9,000 and $9,900. The Horners

4

unsuccessfully moved to exclude this evidence of structuring—an uncharged, separate crime—as irrelevant and unduly prejudicial.

Similarly, the Horners argued that any evidence of their potentially false returns in tax years 2005 and 2006—also an uncharged and separate crime—would be inadmissible. The district court again disagreed, and denied the motion.

Second, the government elicited certain testimony from IRS Agent Owens, examining the Horners' tax status. Specifically, in preparation for trial, Owens conducted an audit and created a tax computation chart showing the additional tax due from the Horners based on the unreported cash deposited into the Horners' personal bank accounts. For 2007, the Horners reported a tax liability of zero, but Owens calculated their corrected tax liability as $116,535. For 2008, the Horners reported a tax liability of $8,614, but Owens calculated their corrected tax liability as $166,476. Owens concluded that, for 2005 through 2008, the Horners owed $474,147 in additional taxes from their unreported income.

Owens's calculation, however, did not account for any business expenses the Horners may have paid from their personal accounts but did not claim as a deduction. During her trial testimony, Owens conceded that any such unclaimed deductions would reduce the Horners' unreported income (and, therefore the tax due) but insisted that the unclaimed deductions would not "have a really big impact," would "not significantly" change her calculation, and would still leave "a

5

substantial understatement."  Notably, the Horners did not object to Owens's testimony.  Despite Owens's calculations at trial, when calculating the amount of tax due during sentencing, the district court ultimately accepted a figure of $573,619 in unclaimed business expense deductions for 2007 and 2008, which reduced the unreported income in that period by approximately one-third.

Third, the Horners requested supplemental jury instructions regarding good-faith reliance on the advice of an accountant and the due diligence obligations of tax preparers generally.  The district court instead gave a modified version of the Eleventh Circuit pattern instructions on good faith reliance on the advice of an attorney and did not instruct the jury as to the due diligence obligations of tax preparers.

The jury ultimately convicted the Horners on all four counts, and, after sentencing, the Horners timely filed a notice of appeal with this Court.  On appeal, Mr. and Mrs. Horner each separately raise the same four issues: (1) the government elicited and failed to correct false testimony from Agent Owens regarding the extent of unclaimed deductions; (2) the district court should have given the requested jury instructions on good faith reliance on accountants' advice and due diligence; (3) the district court should have excluded the testimony on deposit "structuring" as irrelevant and unduly prejudicial; and (4) the district court should have excluded evidence of allegedly fraudulent tax returns from 2005 and 2006 as

6

irrelevant, unduly cumulative, confusing, and prejudicial.  We address each issue in turn.

## II.    PROSECUTORIAL MISCONDUCT

The Horners contend that the government presented false testimony from Owens about the accuracy of her calculations vis-à-vis unclaimed deductions and that the government failed to correct that testimony, in violation of Giglio v. United States, 405 U.S. 150 (1972).

Typically, we review such a claim of prosecutorial misconduct de novo. United States v. McNair, 605 F.3d 1152, 1208 n.79 (11th Cir. 2010).  But when, as here, the defendants do not object at trial or otherwise raise the issue before the district court, such as through a motion for mistrial or for new trial, we review only for plain error.  United States v. Nixon, 918 F.2d 895, 905 (11th Cir. 1990).

To establish prosecutorial misconduct under Giglio, the Horners "must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." McNair, 605 F.3d at 1208.  Perjured testimony "must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory."  United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002).  The defendants are "entitled to a new trial if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  Guzman v. Sec'y,

7

Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011) (internal quotation marks omitted) (emphasis added).  The "could have" standard "requires a new trial unless the prosecution persuades the court that the false testimony was harmless beyond a reasonable doubt."  Id. (internal quotation marks omitted).

Here, we find no Giglio violation.  The Horners have failed at the outset to show that Owens's testimony was false, let alone willfully false.   The Horners rely in particular on statements from the following exchange between Owens and defense counsel:

> Q. If the checks that we have talked about were in fact business expenses that were not deducted from the tax returns filed by the Horners, that would change the tax calculation that you have done; correct?
>
> A. Yes, but not significantly, ma'am.
>
> Q. Now, in your calculation you assumed that no business expenses were paid from the personal account; correct?
>
> A. Correct.
>
> Q. So that means that your computation is wrong if business expenses were paid by the Horners from their personal bank accounts.
>
> A. The unreported income would be reduced.
>
> Q. But still your chart would be unreliable; correct?
>
> A. It would be correctable.
>
> Q. It could be correctable, but you'd have to go back and fix it; correct?

8

A. Would I have to go back and fix it?

Q. I mean, you would have to go back and take into account all of the deductions they didn't claim to come up with an accurate number?

A. Again, if you look at the big picture, based on a sample of those checks that you provided for each year, it won't have a really big impact on that $474,000 tax due and owing.

Q. But my point is that your chart is incorrect if those checks are business expenses.

A. It is not materially incorrect.

Q. That wasn't my question. Is it incorrect?

A. It is not materially incorrect.

The Horners argue that, because the final figures accepted by the district court during sentencing showed more than $573,000 in unclaimed business expense deductions (thereby reducing the unreported income by almost one-third), Owens's testimony was necessarily false or misleading to the jury. But the Horners overlook the context of Owens's cross-examination. Throughout her exchange with defense counsel, the questions and answers she gave regarding the impact of unclaimed expenses were invariably tethered to specific checks that defense counsel suggested were missed tax deductions—to wit, in their briefs the Horners themselves break down the cross-examination by the specific check and amount discussed. As Owens stated, her conclusions were "based on a sample of those checks that [defense counsel] provided," and defense counsel asked about what

9

would happen "if those checks" turned out to be business expenses.  The total of all potential deduction amounts to which the Horners' counsel pointed was approximately $53,000, an order of magnitude less than the figure generated at sentencing and not one that would substantially affect the Horners' total tax due. Owens's testimony was, therefore, neither false nor misleading.  She merely responded accurately to the questions actually posed to her.

Owens even acknowledged—repeatedly—the limitations of her analysis. She agreed with defense counsel that her figures "assumed no business expenses were paid from the personal account," and that "the unreported income would be reduced" to the extent any "business expenses were paid by the Horners."  Defense counsel properly used this acknowledgment—on top of the fairly large number of checks presented by defense counsel during cross-examination (at least 20)—to undercut Owens's credibility and the weight of her testimony in the eyes of the jury.  Given that Owens clearly demarcated the limits and shortcomings of her financial calculations, her decision to comment only on specific assumption-contradicting checks which counsel identified was entirely cogent and should not be misconstrued as misrepresenting the Horners' overall tax status.  Further, no matter the precise amount of the total business expenses, the tax returns still falsely reported Topcat's and the Horners' incomes.

10

Because we find that Owens's testimony was neither false nor misleading, we conclude that no Giglio violation occurred, and the Horners are not entitled to relief on this issue.

### III.    JURY INSTRUCTIONS

Next, the Horners appeal the district court's decision denying two of their requested jury instructions: (1) "Good-Faith Reliance upon Advice of Accountant" and (2) "Due Diligence Obligations of Tax Preparers."

We review a district court's refusal to give a requested instruction for abuse of discretion.  United States v. Dohan, 508 F.3d 989, 993 (11th Cir. 2007) (per curiam).  Specifically, this Court will reverse a district court's refusal to give a requested jury instruction only if: "(1) the instruction is substantially correct, (2) the instruction was not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense."  United States v. Drury, 396 F.3d 1303, 1318 (11th Cir. 2005) (internal quotation marks omitted).  If the jury instruction accurately reflected the law, the trial judge has wide discretion to decide on the style and wording of the instruction.  Id.  This Court examines the jury charges as a whole, determining whether the entire charge sufficiently instructed the jury about the issues.  Id.  We address each of the Horners' two proposed jury instructions in turn, beginning with good faith reliance.

11

## A.    Good Faith Reliance on the Advice of an Accountant

The district court gave the following good faith charge, which is a version of

Eleventh Circuit Pattern Special Instruction 18, "Good-Faith Reliance upon Advice

of Counsel," modified to refer to an accountant:

> Good faith is a complete defense to the charges in the indictment. Since good faith on the part of the defendants is inconsistent with willfulness and willfulness is an essential part of the charges. If the defendants acted in good faith, sincerely believing themselves to be exempt by the law, then they did not intentionally violate a known legal duty, that is they did not act willful. The burden of proof is not on the defendants to prove good faith intent because the defendants do not need to prove anything. The government must establish beyond a reasonable doubt that the defendants about [sic] willfully as charged.
>
> . . . .
>
> Evidence that the defendants in good faith followed the advice of their accountants would be inconsistent with such an unlawful intent. Unlawful intent has not been proved if the defendants, before acting, made a full and complete good faith report of all material facts to an accountant they considered competent, received the accountant's advise as to the specific course of conduct that was followed, and reasonably relied on that advice in good faith.

The Horners argue that the district court abused its discretion by giving this charge

instead of their requested instruction[2] because (1) the evidence supported their

---

[2] The Horners proposed the following instruction:

> Good-faith reliance on a qualified accountant is a defense to willfulness in a case of tax fraud. So, the Defendants would not be "willfully" doing wrong if, before taking any action with regard to the alleged offense, the Defendants consulted in good faith with an accountant whom the Defendants considered competent, made a full and accurate report to that accountant of all material fact of which the

12

charge, (2) their charge correctly stated the law, and (3) the district court's charge did not substantially cover the requested language in their charge.

Even assuming that the Horners' requested good faith charge was both supported by the evidence and legally correct, we find that the district court's given instruction covered all relevant aspects of the requested instruction. In support of their proposed language, the Horners rely primarily on this Court's decision in United States v. Kottwitz, 614 F.3d 1241 (11th Cir. 2010), opinion withdrawn in part on denial of reh'g, 627 F.3d 1383 (11th Cir. 2010), from which they copied much of the language of their proposed jury instruction on good faith

---

Defendants had the means of knowledge, and then acted strictly in accordance with the advice given by that accountant.

Whether the Defendant acted in good faith for the purpose of seeking advice concerning questions about which the Defendant was in doubt, and whether the Defendant acted strictly in accordance with the advice received, are all questions for you to determine.

Also a complete defense to the charges in the indictment is where the tax violation was a result of a failure of an accountant to exercise due care or diligence, and not the result of the Defendants actions. Title 26, Code of Federal Regulations, Section 16694-1 provides that an accountant or tax preparer who prepares taxes for a person "may not ignore the implications of information furnished to the preparer or actually known to the preparer. The preparer must make reasonable inquiries if the information furnished appears to be incorrect or incomplete.

In this case, if you find that an accountant or tax preparer ignored any information, did not make reasonable inquiries as to whether any information provided to him was complete and correct, or otherwise was not diligent, thorough or careful to the best of his ability, and that the failure to exercise due care caused the tax violations charged in the indictment, you must acquit the Defendants.

13

reliance on an accountant.  The Horners misunderstand, however, the actual import of Kottwitz.

In Kottwitz, the district court gave no instructions on good faith reliance on accountants or tax preparers whatsoever—and this Court's analysis in that case must be viewed in light of that fact.  Instead, the district court gave "a general instruction" on good faith and willfulness and did not mention the right to rely in good faith on the advice of professionals.  Id. at 1262 & n.35.  As this Court explained, a "defense of good faith reliance on expert advice is designed to refute the government's proof that the defendant intended to commit the offense."  Id. at 1271 (internal quotation marks omitted); see also United States v. Morris, 20 F.3d 1111, 1115 (11th Cir. 1994) ("Such specific intent may be negated by a good-faith misunderstanding of the law or a good-faith belief that one is not violating the law, regardless of whether or not the belief is reasonable.").  "Such a defense is successful when the defendants establish that they (1) fully disclosed all relevant facts to the expert and (2) relied in good faith on the expert's advice."  Kottwitz, 614 F.3d at 1271.  Because no good faith reliance instruction was given, this Court's analysis focused on whether the evidence met the defendant's "'extremely low' threshold to justify"—and thus require—giving one at all.  See id. at 1271–73 (discussing the standard and cases where the evidence supported giving such an instruction).

14

Granted, this Court in Kottwitz acknowledged that "[t]he requested good faith reliance jury instruction was based on our pattern jury instructions and was, therefore, a correct statement of the law." Id. at 1273. The requested instruction in Kottwitz included additions to the pattern charge based on regulations under the Internal Revenue Code; these additions discussed some of the obligations of tax preparers, and this Court noted that the additional language was consistent with Treasury regulations. Id. at 1273 & n.46. But this Court neither stated nor implied that the proposed language in that case was the only acceptable instruction on good faith reliance to be used by district courts.

Here, the instructions given by the district court included this Circuit's pattern jury instruction on the defense of good faith reliance upon advice of counsel—simply substituting accountant for counsel—and accurately reflected the relevant law. The district court's charge accurately told the jury that (1) good faith, including good faith reliance on the advice of professionals, is a complete defense to the charges in the indictment; (2) the government has the burden to prove intent beyond a reasonable doubt; (3) good faith and intent were issues for the jury to decide; (4) evidence of good faith is inconsistent with the unlawful intent; (5) the defendants must have made a full disclosure of the relevant facts to the accountant for their reliance to have been in good faith; and (6) the defendants must have actually received and relied upon an accountant's advice. See Kottwitz,

15

614 F.3d at 1271; Morris 20 F.3d at 1115–16; Eleventh Circuit Pattern Jury Instructions, Special Instruction 18.

Defendants are not entitled to the jury instructions using the precise language they request where the district court's "charge adequately addresses the substance of the defendant's request." See United States v. Silverman, 745 F.2d 1386, 1396 (11th Cir. 1984). The only substantive difference we find between the Horners' proposed instructions and the instructions given below are the portions discussing the regulatory obligations of tax preparers. Again, although the Kottwitz Court found that the requested jury instruction in that case was "a correct statement of the law" because it "was based on our pattern jury instructions" and contained "language consistent with the regulations under the Internal Revenue Code," the Kottwitz Court did not hold that the additional regulatory language was necessary for the good faith reliance instruction. Kottwitz, 614 F.3d at 1273 & n.46. Indeed, the Kottwitz Court differentiated between those portions of the proposed instruction that were taken from the pattern jury instructions and those that were not, clearly differentiating between the importance of the two. Id. at 1260 n.34. The Horners have not pointed to any case to support their claim that mentioning the regulatory obligations of tax preparers "was essential to understand the nature of the Horners' reliance."

16

Morris also provides little support for the Horners' proposed good faith reliance instruction.  In Morris, this Court found the jury charge in a tax fraud case inadequate, despite being legally correct, because "as a whole it failed to adequately convey the properly asserted good-faith defense on which appellants relied" in two ways.  Morris, 20 F.3d at 1117.  First, the charge only addressed mistake or accident in its definition of "knowingly," but "knowingly" was not part of that district court's definition of the crime.  Id.  Here, however, the district court used the term "knowingly" as part of the elements of the crime and provided additional explanation of the Horners' theory of the case by instructing the jury separately and fully on the good-faith reliance defense.

Second, the Morris charge was inadequate because it did not "make clear" that the defendants' good faith belief did not have to be "objectively reasonable." Id. at 1118.  The Morris Court emphasized, however, that "there is no requirement in this circuit that jury instructions specifically note that a good-faith defense need not be objectively reasonable."  Id.  The Horners' proposed instruction did not discuss objective reasonableness, and the lack of such a discussion does not appear to be at issue.  Morris thus provides no support for the Horners' position that the district court erred by refusing to give their requested charge.

The district court's instruction on good faith reliance accurately stated the law and provided the jury all the understanding necessary to fully consider the

17

Horners' defense.[3]  The district court did not abuse its discretion by not charging

the jury with the specific language about good faith reliance requested by the

Horners.

## B.    Due Diligence Obligations of Tax Preparers

In addition to the language included in their good faith reliance instruction

explaining the obligations of tax preparers, the Horners proposed a similar,

separate instruction—"Due Diligence Obligations of Tax Preparers"—that they

contend the district court erred by not giving.[4]  This instruction purports to use

---

[3] The district court's instruction did contain some language about whether the defendants believed themselves "exempt" from the law or decided not to follow it for political, religious, or moral reasons, even though the Horners did not raise that defense.  Even if this was error, however, it was not "plain error" and was harmless in any event.  The district court instructed the jury on good-faith reliance on advice of an accountant, and the closing arguments focused on whether the Horners lacked knowledge, made a good faith mistake, or had criminal intent.  See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1283 (11th Cir. 2008) (explaining that appellate review of jury instruction "is not to nitpick the instructions for minor defects" and that as long as the jury charge as a whole is correct, even if technically imperfect, no reversible error occurred).

[4] This requested charged stated as follows:

> The Commissioner of the Internal Revenue Service, or delegate, may designate an individual eighteen years of age or older as a registered tax return preparer provided an applicant demonstrates competence in Federal tax return preparation matters by written examination administered by, or administered under the oversight of, the Internal Revenue Service, or otherwise meets the requisite standards prescribed by the Internal Revenue Service, possesses a current or otherwise valid preparer tax identification number or other prescribed identifying number, and has not engaged in any conduct that would justify the suspension or disbarment of any practitioner under the provisions of this part.

> Any individual who is designated as a registered tax return preparer. . . who is not currently under suspension or disbarment from

18

regulations under the Internal Revenue Code to describe the regulation of tax preparers and the ways in which they are obligated to exercise due diligence.

Notably, neither Mr. nor Mrs. Horner cite to a single case requiring the inclusion of this language in a jury charge. Instead, they broadly conflate the district court's alleged error in not administering the proposed good-faith reliance instructions with its failure to administer the proposed due diligence instructions, while their specific arguments all center on the former.

To be clear, the tax fraud crimes here are specific intent crimes for which the government must prove that the Horners intended to do something that they knew violated the law. The tax preparer's own due diligence obligations are thus largely irrelevant to the good faith reliance defense, which focuses on whether the

practice before the Internal Revenue Service may practice before the Internal Revenue Service.

A registered tax return preparer who practices before the Internal Revenue Service is subject to the provisions of this part in the same manner as attorneys, certified public accountants, enrolled agents, enrolled retirement plan agents, and enrolled actuaries.

In general. A registered tax preparer must exercise due diligence –

(1)     In preparing or assisting in the preparation of, approving, and filing tax returns, documents, affidavits, and other papers relating to Internal Revenue Service matters;

(2)     In determining the correctness of oral or written representations made by the practitioner to the Department of the Treasury; and

(3)     In determining the correctness of oral or written representations made by the practitioner to clients with reference to any matter administered by the Internal Revenue Service.

19

defendants fully disclosed all relevant facts to the expert and relied in good faith on that expert's advice. See Kottwitz, 614 F.3d at 1271 (setting forth those elements of the defense). The closest the Horners come to explaining their rationale for the due diligence instruction specifically is their point that the jury should have been able to consider how those obligations "might have influenced the Horners' good faith reliance." But without providing any evidence in the record that the Horners were actually aware of these due diligence obligations—on the contrary, defense counsel repeatedly argued that the Horners were financially unsophisticated—even that argument is incomplete at best.

Notably, moreover, the Horners' only basis for arguing that the evidence supported such an instruction is their claim that the accountant and tax preparer should have inquired further about the existence of unclaimed business expenses. But, the Horners provided the relevant professionals with detailed statements from Topcat, listing business income as well as offsetting business expenses. The Horners fail to explain how the professionals with whom they dealt could have violated their own diligence obligations when they had no basis to know that other accounts from which expenses might be paid even existed. Where the evidence provides no support for a given instruction, it is not error to fail to give it. See United States v. Hill, 643 F.3d 807, 851 (11th Cir. 2011) ("Although the burden on a defendant to put forth sufficient evidence to support a proposed jury instruction is

20

low, . . . Hill failed to meet it because there was no evidence to support the instruction.").

In any event, the district court's failure to give this proposed instruction "in no way impaired the accused's ability to present a defense." United States v. Snipes, 611 F.3d 855, 869 (11th Cir. 2010) (internal quotation marks omitted). As in Snipes, the district court allowed the Horners' attorneys to cross-examine witnesses thoroughly—including with respect to the obligations of tax professionals—and to present argument about H&R Block's supposed lack of care and the Horners' supposed lack of sophistication. Id. The jury heard the Horners' defense rationale and had ample opportunity to consider it—especially in light of the district court's instructions that the Horners could rely in good faith on their accountant's advice. See, e.g., United States v. Ryan, 289 F.3d 1339, 1345 (11th Cir. 2002) (finding no impairment of ability to present a defense when the defendant argued the issue to the jury and the jury had opportunities to consider the defense).

We therefore find no abuse of discretion in the district court's decision to not administer the Horners' proposed jury instructions on the due diligence obligations of tax preparers.

21

## IV.    EVIDENTIARY RULINGS

Finally, the Horners appeal the district court's decision denying two of their motions in limine to exclude evidence of: (1) "structuring" cash deposits; and (2) false tax returns filed in 2005 and 2006.

We review a district court's grant or denial of a motion in limine for an abuse of discretion.  Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011).

## A.    Evidence of "Structuring"

The Horners first argue that the district court erred by allowing the government to characterize the Horners' cash deposits as "structuring," even though no one informed the jury that "structuring" is a crime.  The Horners fully concede that the government could present evidence of the cash deposits themselves.  Rather, they contend that describing the cash deposits as "structuring" was impermissible under Federal Rules of Evidence 403 (because the unfair prejudice substantially outweighed the probative value) and 404(b) (for being extrinsic evidence of an uncharged crime).

Rule 404(b) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  "This evidence may be admissible for another purpose, such as proving

22

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

This Court uses a three-part test for determining whether other bad acts are admissible under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

United States v. Matthews, 431 F.3d 1296, 1310–11 (11th Cir. 2005). "Moreover, Rule 404(b) does not exclude evidence that is 'inextricably intertwined' with evidence of the charged offense." McNair, 605 F.3d at 1203. That is, Rule 404(b) does not exclude evidence of other criminal activity that is linked in time and circumstances with the crime charged or evidence that is an integral and natural part of the complete story of the crime. Id.

We conclude that the evidence of "structuring"—including the government's characterization of it as such—was admissible. With respect to Rule 404(b), we first find that the evidence was inextricably intertwined with evidence of the fraudulent tax returns, because the cash deposits formed the basis of the tax fraud itself. Second, under Rule 404(b)(2), the "structuring" evidence also was relevant to an issue other than the Horners' character: their criminal intent. The Horners argued at trial that they lacked the specific intent to commit tax fraud, but evidence

23

that they consciously structured their cash deposits to avoid CTRs strongly suggested that they knew their actions were unlawful.

Nor should the evidence have been excluded under Rule 403.  Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  Old Chief v. United States, 519 U.S. 172, 180 (1997); see also United States v. Spoerke, 568 F.3d 1236, 1251 (11th Cir. 2009) (explaining that "relevant evidence is inherently prejudicial," and only excluded "when unfair prejudice substantially outweighs probative value") (internal quotation marks omitted).  "Rule 403 is an extraordinary remedy that must be used sparingly because it results in the exclusion of concededly probative evidence."  United States v. US Infrastructure, Inc., 576 F.3d 1195, 1211 (11th Cir. 2009).  "[I]n cases where this Court has found other acts evidence inextricably intertwined with the crimes charged, the Court has refused to find that the evidence should nonetheless be excluded as unduly prejudicial" under Rule 403.  Id.

As explained above, the "structuring" evidence was inextricably intertwined with the tax fraud, because the cash deposits were the unreported income and the structuring of those deposits potentially demonstrated a conscious effort to avoid

24

the reporting requirements.  Moreover, we find that the probative value of this evidence clearly outweighed any undue prejudice.  The evidence was highly probative in addressing the issue of the Horners' financial savvy—an issue the Horners themselves made central to the trial—and the government mitigated and minimized its prejudicial nature by not informing the jury that structuring actually constituted a separate crime or wrong.

The district court did not, therefore, abuse its discretion in denying the Horners' motion in limine to exclude this evidence.

## B.    Evidence of False 2005 and 2006 Tax Returns

The Horners next argue that the district court erred by allowing the government to present evidence relating to their taxes and finances from 2005 and 2006 under Rules 404(b) and 403.  As with the structuring evidence, we find neither rule prohibits the admission of this evidence from previous years.

Again, Rule 404(b) does not exclude evidence "inextricably intertwined" with the charged conduct.  McNair, 605 F.3d at 1203.  This Court's decision in United States v. Ford, 784 F.3d 1386, 1394 (11th Cir. 2015), is illustrative, and worth quoting at length:

> Seventeen alleged victims of Ford's fraud scheme testified at trial. Only eight of those, however, were victims of the offenses charged in the indictment.  Ford argues that the district court abused its discretion in admitting the testimony of the remaining nine victims concerning tax returns Ford filed using their identities either as the taxpayer or, falsely, as a dependent on someone's return.  She maintains that this

25

was impermissible under Rule 404(b) of the Federal Rules of Evidence.

Rule 404(b) is the wrong place to begin the analysis of this claim. Our Circuit repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b). See United States v. U.S. Infrastructure, Inc.*,* 576 F.3d 1195, 1210–11 (11th Cir. 2009) (such evidence admissible if it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime"); United States v. Muscatell*,* 42 F.3d 627, 630–31 (11th Cir. 1995) (testimony regarding uncharged conduct that was part of the same fraud scheme "was properly admissible as intrinsic evidence of the same series of transactions as the charged offenses" and was outside the scope of Rule 404(b)). The testimony of the additional victims concerned fraudulent tax returns that were filed by Ford, during the same time period, and using the same methods. For example, many of the returns contained false Schedule C information, like the returns charged in the indictment. Others used the same common false addresses or false dependents—again, like the returns charged in the indictment. And several of the victims also were homeless like at least one of the victims whose return was charged in the indictment. Such testimony is probative evidence inextricably intertwined with the scheme charged in the indictment. The district court therefore did not abuse its discretion.

Here, the Horners allegedly had an ongoing plan to siphon funds from Topcat into their personal account in order to avoid reporting that income on their tax returns. The evidence from previous years was therefore part of the same plan, and used the same modus operandi as the charged offenses—diverted cash receipts.

Alternatively, the evidence from 2005 and 2006 was admissible under Rule 404(b) to establish the Horners' motive and intent. As previously explained, Rule

26

404(b) allows the admission of evidence of uncharged criminal activity "only if relevant to an issue other than the defendant's character or propensity to commit a crime." United States v. Duran, 596 F.3d 1283, 1298 (11th Cir. 2010). The other act evidence must be introduced for a proper purpose, be supported by sufficient evidence, and have probative value that is not substantially outweighed by unfair prejudice. See Matthews, 431 F.3d at 1310–11. Here, there was a proper purpose for introducing the 2005 and 2006 evidence because the earlier, identical criminal acts showed the Horners' intent, at least insofar as it rebutted the Horners' claim of mere mistake or accident.

Finally, regarding Rule 403 in particular, any unfair prejudice from the 2005 and 2006 evidence did not substantially outweigh its probative value. The Horners vigorously contested the issue of intent at trial. The Horners' 2005 and 2006 acts, though in earlier years, were part of the same set of actions through which the jury found they committed tax fraud in 2007 and 2008—making cash deposits of Topcat's revenues into their personal accounts. See United States v. Edouard, 485 F.3d 1324, 1345–46 (2007) (considering factors such as (1) whether the defendant contested the issue of intent, (2) the similarity of the charged and extrinsic offenses, and (3) the temporal proximity of the charged and extrinsic offenses in order to determine whether the probative value outweighed the prejudicial effect).

27

The district court did not, therefore, abuse its discretion by admitting evidence of the Horners' 2005 and 2006 tax fraud.[5]

## V.    CONCLUSION

Based on the foregoing reasons, we affirm Mr. and Mrs. Horner's convictions.

**AFFIRMED.**

---

[5]As yet another alternative, we would uphold the Horners' convictions because admission of the 2005 and 2006 evidence is—at worst—harmless error.  As Mrs. Horner concedes in her opening brief: "The government had a copious amount of evidence in this case," such that there was "no need to supplement the evidence . . . with . . . material from previous tax years."  See United States v. Hubert, 138 F.3d 912, 914 (11th Cir. 1998) (concluding error in admission of evidence under Rule 404(b) was harmless error in light of "substantial" evidence against the defendant).

28