[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11028

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EROTIDA NATASHA HARDEN ORTIZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00057-RBD-DCI-1

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Erotida Ortiz appeals her convictions and total sentence of 96 months' imprisonment for one count of conspiracy to defraud the United States and six counts of aiding in the preparation and presentation of a false tax return. First, Ortiz argues that the government presented insufficient evidence for each count to establish that she willfully agreed to submit and submitted false tax returns that entitled her customers to higher refunds. Second, Ortiz argues that the district court erred in allowing testimony about her alleged Paycheck Protection Program ("PPP") loan fraud under Federal Rule of Evidence 403. Third, Ortiz argues that the district court erred in failing to instruct the jury on the good faith defense. And lastly Ortiz argues that her below Guidelines sentence is substantively unreasonable because her codefendant, Aida Cortes, received a lesser sentence. For the following reasons, we affirm.

**I.**

A federal grand jury charged Ortiz with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count One), and six counts of aiding in the preparation and presentation of a false tax return, in violation of 26 U.S.C. § 7206(2) (Counts Two to Seven). The indictment lists Cortes as a coconspirator. The indictment alleged that Ortiz owned a tax preparation business, Certified Taxes, which Cortes managed. As to Counts Two to Seven, it listed the specific tax returns that were

filed for the following individuals for tax years 2016 and 2017: C.Q. as to Count 2; A.M. as to Count 3; M.M. as to Count 4; J.M. as to Count 5; A.P. as to Count 6; and J.D. as to Count 7.

Ortiz moved to exclude, in relevant part, any mention at trial to her uncharged, alleged PPP loan fraud, arguing that she had a Fifth Amendment right against self-incrimination. She contended that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury because the evidence was only indicative of propensity, as PPP loans were not relevant or similar to the instant offense conduct. The government responded by arguing that the evidence was admissible, if Ortiz testified, for impeachment on cross-examination and under Federal Rule of Evidence 404(a)(2).

The case proceeded to trial. During trial, the government called several Internal Revenue Service ("IRS") agents, who testified to the following. To submit taxes returns to the IRS, a company must have an electronic filer identification number ("EFIN") and a preparer tax identification number ("PTIN"). To obtain an EFIN, the person must pass a suitability check, which includes a criminal background check. Cortes obtained an EFIN, which Certified Taxes used to submit tax returns. The Schedule C form on a tax return listed profits or losses from a business. If someone did not have a business, they could not put any expenses on a Schedule C form. Instead, they would deduct work-related expenses on a Schedule A. Earned income tax credit was a credit that increased as someone's income increased, leveled off, and then decreased as

their income increased.  A negative income on a Schedule C form offset wages earned on a W-2 for purposes of calculating the earned income tax credit.

Ricky Poole, a retired IRS agent who previously investigated Certified Taxes, testified to the following.  During his investigation, he interviewed Ortiz, who said that she personally reviewed all of the tax returns the company filed.  Although Certified Taxes prepared around 700 Schedule C forms, Ortiz told him that the company had prepared only twenty Schedule C forms.  She told him that she required documentation for any Schedule C expenses and would investigate any claims of no income.  According to another IRS agent, throughout the scheme, Ortiz made approximately $1.1 million from processing returns.

The government also called Chris Nisbeth, who testified to the following.  Nisbeth worked for Drake Software, which offered tax preparation software to tax professionals.  Certified Taxes used Drake Software with Ortiz and Cortes listed as contact individuals. The preparer was responsible for inputting the data into the system for each document and, to use the software properly, needed to understand how to prepare taxes.  A Schedule C form did not generate automatically, but rather, a preparer had to navigate to that page of the software.

The government called several past customers of Certified Taxes: Joseph Mojica, Carmen Quinones, Angela Williams, Antonio Rivera, Alberto Medina, Maribel Medina, Alfred Pennant, Jamark Salazar, and Jose Dominguez.  These past customers

testified that, while their taxes indicated that they had a business for which they incurred expenses but made no income, they never told anyone at Certified Taxes any of those things and never provided documentation to that effect. On cross-examination, the customers testified that they were charged a flat fee regardless of the size of the return and did not receive any kickbacks.

The government then called two former employees of Certified Taxes, who testified to the following. They did not have any prior experience filing taxes. For training, Ortiz and Cortes provided a packet about taxes, including information on tax returns involving businesses. No one at Certified Taxes told them to make up numbers to put on a tax form. They received a commission based on how many returns they completed. One employee testified that Ortiz and Cortes reviewed every tax return she prepared. The other employee testified that she did not fill out any Schedule C forms without documentation. That same employee indicated that, in December 2018, the employees at Certified Taxes found out they were preparing taxes incorrectly after going to an IRS seminar.

After the government rested, Ortiz moved for judgment of acquittal on all counts. The district court denied her motion.

Then, Ortiz called Darryll Jones, an expert in taxation, who testified to the following. There was no minimum level of education needed to get a PTIN number. The expenses listed on a Schedule C form were not automatically disqualified if a business name was not listed. On cross-examination, Jones testified that the tax

preparer must have some substantiation of the expenses entered on the Schedule C form. He testified that a person could get an earned income tax credit for more than what they had withheld in their taxes. And he testified that one way to get the maximum earned income tax credit was to list deductions on a Schedule C form.

Ortiz herself then testified to the following in her defense. She primarily worked on marketing the company and did not review most of the taxes it filed. Cortes and Michael Harden were responsible for checking the returns before filing. Ortiz and Cortes trained their employees with a study guide. She did not tell anyone to make up numbers. She was previously convicted of three felonies: dealing in stolen property, false verification to a pawn broker, and food stamp fraud. She paid her employees a commission based on the amount of tax returns they filed. As the administrator, she was the default user in the Drake Software program. In 2018, she attended an IRS seminar where she learned that Certified Taxes has been incorrectly using Schedule C forms, as they had listed regular W-2 expenses on the Schedule C form. Soon after that seminar, she informed everyone at the office the correct way to complete Schedule C forms. She did not prepare or assist in any of the tax returns listed in the indictment. If her name was on a tax return, it was because the person had logged into the system "under admin." She charged customers a flat fee and did not ask for kickbacks.

On cross-examination, Ortiz testified that, before opening Certified Taxes, she worked for two other tax companies that the

IRS shut down.  She denied the government's assertion that all of her customers except one received a refund, although when confronted with evidence she stated that she was unsure.  She denied the government's assertion that customers receiving a big refund benefited her because it would incentivize customers to come back.

The government asked whether she had received and applied for a PPP loan, to which she objected.  Ortiz argued that, because she was being investigated for PPP loan fraud, she had a Fifth Amendment right against self-incrimination.  The court explained that her credibility was at issue because she had elected to testify.  After a recess, the court explained that, according to its research, Ortiz waived her right to raise a Fifth Amendment privilege by taking the stand.  Ortiz argued that the Rule 403 balancing test weighed in her favor based on her constitutional right against self-incrimination.  The court explained that the alleged PPP loan was relevant because it bore on the plausibility of her explanation that the improper tax returns were the result of a mistake.  Ortiz asked whether the court found that the probative value of the alleged PPP loan was not substantially outweighed by her right against self-incrimination, to which it replied that it did.  Ortiz asked for, and the court granted, a standing objection.

Ortiz retook the stand for cross-examination.  She testified that she received a PPP loan in 2021.  She testified that someone else prepared her application for that PPP loan, in which they indicated that she had another business that she did not have.  She

testified that she received $20,000 from that PPP loan. On redirect examination, she testified that, for the PPP loan, she found someone online to submit the application and sent that person her tax return. She testified that she did not give that person the false information listed on the application about a separate business.

Then, Cortes herself, in her defense, testified to the following. When filling out Schedule C forms, she asked customers how far they drove to work, if they used their cell phone for work, and if they bought food at work. She would input the information into the Schedule C form regardless of whether the person had a business. After Ortiz attended an IRS forum, she learned that the way she had completed Schedule C forms was incorrect. Cortes managed the company's office.

Ortiz then renewed her motion for judgment of acquittal, which the district court denied.

As to the jury instructions, Ortiz objected to the proposed instruction on the good faith defense, arguing for the inclusion of language stating that "evidence that establishes only that a person made a mistake in judgment or error in management or was careless does not establish fraudulent intent." The district court explained that Ortiz's instruction was a modification of the pattern jury instruction. The government argued against any modification to the pattern instruction. The district court stated that it would not modify the pattern instruction and overruled Ortiz's objection.

In the jury instructions, the district court instructed that "[e]vidence that a Defendant was previously convicted of a crime

is not evidence of guilt of the crime in this trial," but rather could be used to decide the credibility of the testimony. Further, it instructed on the good faith defense, specifically stating that:

> Good-Faith is a complete defense to the charges in the indictment since good-faith on the part of a Defendant is inconsistent with willfulness, and willfulness is an essential part of the charges. If that Defendant acted in good faith, sincerely believing herself to be exempt by the law, then that Defendant did not intentionally violate a known legal duty – that is, that Defendant did not act "willfully." The burden of proof is not on that Defendant to prove good-faith intent because that Defendant does not need to prove anything. The government must establish beyond a reasonable doubt that each Defendant acted willfully as charged.

The jury ultimately found Ortiz guilty on all counts.

The U.S. Probation Office generated Ortiz's presentence investigation report ("PSI"). The PSI grouped the counts together pursuant to U.S.S.G. § 3D1.2(d). Pursuant to U.S.S.G. § 2T4.1(J), her base offense level was 24. Pursuant to U.S.S.G. § 2T1.4(b)(1)(B), Ortiz received a two-level increase because she professionally caused tax returns to be filed at Certified Taxes. Next, pursuant to § 2T1.4(b)(2), Ortiz received a two-level increase because she provided co-conspirators with the instructions and training on how to file fraudulent tax returns. And, pursuant to U.S.S.G. § 3C1.1, she received a two-level increase because she obstructed justice when she lied at trial that she had no knowledge of

tax preparation.  The PSI thus calculated her total offense level as 30.

As to her criminal history, Ortiz had prior convictions, including cultivation of marijuana, possession of 20 grams or less of cannabis, food stamp fraud, dealing in stolen property, and receiving money from a pawnbroker by false verification of ownership. She had three criminal history points, resulting in a criminal history category of II.

For Count One, the statutory maximum term of imprisonment was five years.  For Counts Two to Seven, the statutory maximum term of imprisonment was three years per count.  Based on a total offense level of 30 and a criminal history category of II, her total guideline range was 108 to 135 months' imprisonment.

Ortiz submitted objections to the PSI, which are not relevant to this appeal.  The government did not object to the PSI.  In her sentencing memorandum, Ortiz asked for a sentence of 60 months' imprisonment.  She argued that the government abused its prosecutorial discretion in charging her with seven counts and Cortes with only one because Cortes managed the business and assisted in the preparation of false tax returns.  She contended that the difference in charging was the government's attempt to "get around" any future argument of a sentencing disparity.

At the consolidated sentencing hearing, the district court noted that, with a total offense level of 30 and a criminal history category of II, Ortiz's guideline range was 108 to 135 months' imprisonment.  As to Cortes, it noted that, while her Guideline range

would have been 97 to 121 months' imprisonment based on a total offense level of 30 and a criminal history category of I, Cortes's guideline range was 60 months' imprisonment due to her statutory maximum. The government argued for both Ortiz and Cortes to be sentenced within their applicable guideline ranges. It contended that Ortiz deserved a higher sentence than Cortes based on her knowledge and role in the scheme, her criminal record, and her fraudulent conduct regarding the PPP loan.

Ortiz asked the district court not to consider the alleged PPP loan because she had not been charged with any PPP fraud. She argued that there was no reason she should be treated any differently than Cortes because both were integral to the scheme. She contended that the government abused its prosecutorial discretion in charging her with extra counts with which it did not charge Cortes. But she acknowledged that her criminal record allowed for her to be "treated a little differently."

The district court sentenced Cortes to 54 months' imprisonment and sentenced Ortiz to a total sentence of 96 months' imprisonment, consisting of 60 months' imprisonment as to Count One and 6 months' imprisonment as to Counts Two to Seven, all to run consecutively. The district court imposed a total supervised release of three years, imposed a total restitution of $3,796,000, and waived the imposition of a fine. The district court noted that, based on the 18 U.S.C. § 3553(a) factors, the sentence reflected a balance between the nature of and her role in the offense, her criminal history, and the need to avoid sentencing disparities. It explained that

the 36-month difference between the sentences imposed on Ortiz and Cortes was warranted by Ortiz's criminal history and organizational leadership, including the formation of the entity, origin of the concept of the fraud, and implementation of the fraud.

This appeal ensued.

## II.

We review the denial of a motion for a judgment of acquittal *de novo*, viewing all facts and inferences in the light most favorable to the government. *United States v. Holmes*, 814 F.3d 1246, 1250 (11th Cir. 2016). The district court's denial of a motion for a judgment of acquittal will be upheld "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000)). It is not enough for a defendant to put forth a reasonable hypothesis of innocence, as the issue is not whether the jury reasonably could have acquitted, but whether it reasonably could have found the defendant guilty. *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009). "Although the evidence need not exclude every reasonable hypothesis of innocence," a conviction will not be affirmed if it is predicated on "conjecture." *United States v. Toler*, 144 F.3d 1423, 1433 (11th Cir. 1998).

When a defendant takes the stand and testifies in her own defense, the jury may disbelieve her testimony, and the defendant's own statements "may be considered as *substantive evidence* of the defendant's guilt." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (emphasis in original). In other words, "when a defendant

chooses to testify, [s]he runs the risk that if disbelieved 'the jury might conclude the opposite of h[er] testimony is true.'" *Id.* (quoting *Atkins v. Singletary*, 965 F.2d 952, 961 n.7 (11th Cir. 1992)).

To sustain a conviction for conspiracy under § 371, the government must show: "(1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v. Harmas*, 974 F.2d 1262, 1267 (11th Cir. 1992) (quoting *United States v. Cure*, 804 F.2d 625, 628-30 (11th Cir. 1986)). Because direct evidence of an agreement is rare, an agreement "can be inferred from acts that furthered the conspiracy's purpose." *United States v. Miller*, 693 F.2d 1051, 1053 (11th Cir. 1982) (quoting *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir. 1980)).

To prove a violation of 26 U.S.C. § 7206(2), the government must show that the defendant (1) willfully and knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained false material statements. *See United States v. Haynes*, 573 F.2d 236, 240 (5th Cir. 1978).[1] The defendant does not need to sign or prepare the return to be prosecuted under this statute. *See United States v. Wolfson*, 573 F.2d 216, 225 (5th Cir. 1978). Willfulness is a "voluntary, intentional violation of a known legal duty" that does not require proof of evil motive or bad intent.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

*United States v. Brown*, 548 F.2d 1194, 1199 (5th Cir. 1977). This is generally shown through circumstantial evidence, such as making false invoices or documents, concealing assets to hide the source of income, and any other conduct that misleads or conceals. *Id.* at 1199 & n.14.

Here, we conclude that the district court did not err in denying Ortiz's motion for judgment of acquittal because the government presented sufficient evidence as to each count. As to Count One, the government presented sufficient evidence as to the existence of an agreement to defraud the United States through submitting false tax returns that claimed Schedule C expenses that reduced the earned income for the customer and inflated their refund, encouraging the customer to return and refer others to the business. The government presented evidence that: (1) Ortiz and Cortes trained their employees, who ultimately filed the false tax returns; (2) Cortes managed the office while Ortiz marketed the business; and (3) Cortes acquired an EFIN to submit taxes, as Ortiz was unable due to her prior felonies. Because the jury rejected Ortiz's testimony, her testimony that she did not review the tax returns or instruct her employees to fabricate information was substantive evidence of her guilt, as corroborated by testimony that the tax returns claimed false Schedule C expenses and that Ortiz reviewed all of them. As to Counts Two to Seven, the government presented sufficient evidence that Ortiz willfully and knowingly aided or assisted in the false filings identified in the indictment. Witnesses testified that Ortiz reviewed every tax return.

Accordingly, we affirm as to this issue.

## III.

We review a district court's ruling on admission of evidence for abuse of discretion. *United States v. Jimenez*, 224 F.3d 1243, 1249 (11th Cir. 2000). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (quoting *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005)).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Generally, all relevant evidence is admissible at trial unless provided otherwise by statute, the Constitution, the Federal Rules of Evidence, or the Supreme Court. Fed. R. Evid. 402.

Relevant evidence "may" be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Exclusion under Rule 403 is an "extraordinary remedy" that courts should employ "only sparingly since it permits the trial court to exclude concededly probative evidence." *Smith*, 459 F.3d at 1295 (11th Cir. 2006) (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)). Accordingly, we view the disputed evidence "in a light most favorable to its

admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)).  A similarity between an extrinsic act and the "charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).  Unfair prejudice is defined as "relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Here, we conclude that the district court did not err in admitting evidence of the alleged PPP loan fraud pursuant to Rule 403 because its probative value was not substantially outweighed by the danger of unfair prejudice, as both the instant offense conduct and the alleged fraud involved misrepresentations to the government on Schedule C forms.   Further, there was no risk of confusion of the issues because she executed the schemes in different ways, i.e., the instant offense conduct involved her business filing false tax returns and the alleged fraud involved her application for a PPP loan regarding a separate business.

Accordingly, we affirm as to this issue.

## IV.

We review a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Martinelli*, 454 F.3d 1300, 1309 (11th Cir. 2006).  A district court abuses its discretion in refusing such a request where: (1) the instruction correctly stated the law; (2) the instruction's subject matter was not

substantially covered by other instructions; and (3) the refusal seriously impaired the defendant's ability to defend herself. *Id.* If the charge given "adequately addresses the substance of [her] request," a defendant is not entitled to an instruction using her precise language. *United States v. Horner*, 853 F.3d 1201, 1210 (11th Cir. 2017) (quoting *United States v. Silverman*, 745 F.2d 1386, 1396 (11th Cir. 1984)).

Issues not briefed on appeal are deemed forfeited and will not be addressed absent extraordinary circumstances. *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 95 (2022).

Here, we conclude that the district court did not err in failing to instruct the jury on the good faith defense because it did give that instruction. While the district court did not instruct the jury with Ortiz's precise language, she abandoned any argument that not using her precise language was error by failing to raise it as an issue in her brief.

Thus, we affirm as to this issue.

## V.

We review a sentence's reasonableness for abuse of discretion, regardless of whether that sentence falls inside or outside of the guideline range. *Gall v. United States*, 552 U.S. 38, 51 (2007). "Substantive reasonableness involves examining the totality of the circumstances and whether the sentence is supported by the sentencing factors outlined in [18 U.S.C.] § 3553(a)." *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010). "The party

challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a), which includes, in relevant part, the need to avoid unwarranted sentencing disparities. § 3553(a)(2).

A defendant may challenge her sentence as substantively unreasonable due to an "unwarranted" sentencing disparity under § 3553(a)(6). *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). A difference in sentences is warranted if meaningful differences in the codefendants' conduct and situations justified it. *United States v. Howard*, 28 F.4th 180, 216 (11th Cir. 2022). "The underlying facts of the crime and all of the individual characteristics are relevant" to a court's evaluation of alleged sentencing disparities and its assessment of whether two defendants are similarly situated. *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015). We have also stated that "[d]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." *United States v. Regueiro*, 240 F.3d 1321, 1325–26 (11th Cir. 2001).

Here, we conclude that Ortiz's sentence is not substantively unreasonable because the 36-month sentencing disparity was warranted based on Ortiz's higher criminal history, including prior fraudulent conduct, and leadership role in the instant offense

conduct. Indeed, she reviewed all of the tax returns filed at the company and worked at two prior tax companies closed by the IRS.

Accordingly, we affirm as to this issue.

## VI.

For the reasons stated, we affirm Ortiz's convictions and sentences.

**AFFIRMED.**