[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13928

_____

D.C. Docket No. 6:15-cr-00084-GKS-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANE PLATE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 5, 2016)

MARTIN and JORDAN, Circuit Judges, and VINSON,[*] District Judge.

VINSON, District Judge:

This case raises a common dilemma in sentencing defendants for financial crimes: balancing the payment of restitution for the victims against the length of incarceration for the defendant.  Ane Plate pled guilty to embezzlement by a bank officer or employee, in violation of 18 U.S.C. § 656.  When she was unable to pay full restitution, she was sentenced to 27 months in prison.  Plate argues on appeal that the sentence violated her constitutional rights and that it was both procedurally and substantively unreasonable.  After careful review, and with the benefit of oral argument, we hold that the sentence was substantively unreasonable and that a new sentencing is required.

## I.

Born in American Samoa, Polynesian Islands, Plate moved to Hawaii with her family when she was five or six years old.  While attending the University of Hawaii, she met her future husband Raymond.  She was 20 years old at that time, and he was 43.  Raymond worked for the District Courts of Hawaii and eventually became a supervisor.  He retired in 1989, after which the couple moved to Florida where Plate was employed as a financial assistant or advisor for the next 25 years.

---

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

During the time relevant to this case, Plate worked at Wells Fargo Advisors Financial Network ("Wells Fargo") at their branch office in Orlando, Florida.  She was the long time financial advisor for an elderly couple, Mr. and Mrs. D.M., and she managed their securities and bonds portfolio.  Over the course of her 20-year relationship with the couple, they became close friends.  As their mental capacities diminished with age---and after they moved into an assisted living facility---Plate began to perform duties for the couple outside and beyond the traditional financial advisor role, including driving Mr. D.M. to his bank, helping Mrs. D.M. obtain her medical prescriptions, and performing other care-giver activities.

In 2013, Plate told Mr. and Mrs. D.M. that her husband Raymond had been suffering from a terminal illness to which he eventually succumbed in September of that year.  After his death, Plate asked the couple for money to help with funeral expenses, and they gave her a personal check for $9,000.00.  Shortly thereafter, on or about October 22, 2013, Plate induced Mr. D.M to execute a Wells Fargo ACH Authorization Agreement that allowed for the transfer of funds from the couple's Wells Fargo trust account into a separate account at SunTrust Bank.  From October 2013 through May 2014, she manipulated Mr. D.M. into writing personal checks to her (12 total) from the SunTrust account, and she liquidated securities in the trust account by making a number of unauthorized sales (15 total).  She used the funds that she obtained from these transactions to, *inter alia*, pay her mortgage and make

3

major upgrades to her home, including new fencing and air conditioning units.  In total, she defrauded the couple of $176,079.70, and she left little to nothing in their account.

In July 2014, a Secret Service agent interviewed the couple at their assisted living facility.  Mr. D.M---who suffered from dementia---was incoherent during the course of the interview, and the couple's adult son confirmed that his parents had diminished mental capacity.  The next month, on August 26, 2014, the agent contacted and interviewed Plate at a public coffee shop, during which she gave a written confession, detailed the extent of her fraud, and expressed remorse for her actions.  By indictment dated April 15, 2015, she was charged with a single count of embezzlement by a bank officer or employee in violation of 18 U.S.C. § 656.  She self-surrendered on April 20, 2015, and she was released with pretrial service supervision that same day.  She subsequently pled guilty to the offense as charged in the indictment.

The presentence investigation report ("PSI") calculated a base offense level of 7 under U.S.S.G. § 2B1.1(a)(1).  Plate received a 10-level enhancement under § 2B1.1(b)(1)(F) based on the amount of the loss, along with a 4-level enhancement under § 2B1.1(b)(19)(A)(iii) because the crime involved a violation of securities law and because she was a financial advisor.  After receiving a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)-(b), her total offense

level was 18.  Plate had no prior convictions, which resulted in a criminal history category of I.  Based on an offense level of 18 and a criminal history category of I, her guideline range was 27 to 33 months.

The PSI reported that Plate, who was 59 years old at the time of sentencing, had a traumatic childhood during which she witnessed her mother being physically abused by four or five different husbands.  The PSI also reported that her husband of more than 30 years (who was described as "her rock and best friend") had died in September 2013, and she had reportedly "not been able to overcome his death." In or about June 2015, after the events giving rise to this case, Plate was diagnosed with depressive disorder, sold her house, and moved in with her brother.  She was unemployed at that time, with no significant assets or liabilities, and her net worth was $47,500.00.  The PSI did not identify any factors that would warrant departure from the guideline range of 27 to 33 months, but it did identify several factors that might warrant a sentence outside the advisory range, namely, her age, upbringing, mental condition, and the fact that she had no prior criminal history.  Neither party objected to the PSI.

Prior to sentencing, Plate filed a memorandum with the district court, asking for a sentence of probation (which she realized would be a "tremendous variance"). She maintained that she was extremely remorseful, had sold her house to help pay restitution, and was determined "to pay back ever [sic] penny that is owed."  She

5

argued that probation was appropriate in her case---and that recidivism and safety of the community were not a concern---because her crime was an anomaly brought on by depression and reduced mental capacity following the death of her husband.

In support of her position and argument, Plate attached a forensic evaluation by a licensed psychologist, Jacquelyn Olander, Ph.D.  According to Dr. Olander's report, Raymond made most of couple's "important life decisions" and "took care of everything" during their marriage.  After he died, Plate "experienced confusion and significant uncertainty about herself."  Having to assume the responsibilities of life without her husband, Dr. Olander opined, "created much fear and apprehension such that she developed a maladaptive coping style of avoidance characterized by apathy and indifference."  Because of this "maladaptive coping to stress" (coupled with her "impaired emotional understanding" and "reduced mental capacity"), Dr. Olander determined that Plate "may have engaged in illegal behaviors based upon her attempt to replace or substitute the loss of her husband without any conscious awareness of the occurring underlying psychological processes."[1]

---

[1] According to the sentencing memorandum:

> [Plate and Raymond] had no children and by all accounts were a very united couple.  Mr. [sic] Plate has stated that she has been unable to overcome his death.  The actions that constitute the charges in this case occurred shortly after her husband's death.  Ms. Plate has acknowledged that her husband's death left her in total and absolute despair.

* * *

6

In addition to Dr. Olander's report, the sentencing memorandum attached numerous letters from Plate's siblings, coworkers, her supervisor at Wells Fargo, and former clients, all expressing their belief that her actions were completely out of character and detailing the profound impact that her husband's death had on her. Perhaps most notably, the victims' adult children also wrote on her behalf, saying what a good and trusted friend she was and representing that their "whole family" believed that sending her to jail would not be appropriate on the facts of the case.[2]

At the sentencing hearing on August 19, 2015, Plate told the district judge that she was "truly sorry." She also told the judge (through her attorney) that she brought $45,000.00 in cashier's checks from the proceeds of the sale of her house to put toward restitution. Because the PSI calculated her net worth as $47,500.00, that was "pretty much everything she ha[d]." Her attorney further argued that her behavior was "aberrant" and that a non-incarceration (probationary) sentence was sufficient punishment as she "will live with this the rest of her life and her remorse and her shame."

---

It is significant that Dr. Olander believes that Ms. Plate may have engaged in illegal behaviors based upon her attempt to replace or substitute the loss of her husband. While to the common observer this may seem unusual, Ms. Plate's life completely imploded upon the loss of her husband and protector.

[2] Mr. and Mrs. D.M. had both died by the time of sentencing.

7

The government did not dispute or challenge anything that Plate said during the sentencing hearing, except to say that a probationary sentence was not possible. The government argued that because a violation of Section 656 is a Class B felony, the district judge was required to impose a term of prison (although it did request a low-end guideline sentence). Plate pointed out in response, however, that because she self-surrendered on April 20, 2015, the district judge could sentence her to "time-served" (for that one day) followed by supervised release, which "would be a legal sentence if the Court decided that, balancing out all the factors under [Title 18, United States Code, Section 3553(a)(1)-(7)], a sentence of non-imprisonment was appropriate."

After noting that Plate had used her position of trust to take advantage of "demented" and "helpless" victims, the district judge stated (emphasis added):

> Now, the Court takes into account that you have paid back $40,000 toward restitution; but that's just a drop in the bucket when you're talking about $142,000 that is what you stole.
>
> *The Court would be glad under this case to give you probation if you had paid back the restitution; but with all this restitution still outstanding, the Court just can't do it.*
>
> I'll tell you what I will do, though. You have a total offense level of 18, criminal history category I. The Court sees no reason in the Presentence Report to depart from the guidelines. I will sentence you to the low end of the guidelines of 27 months in the Bureau of Prisons, a two-year supervised release term, restitution of

8

$142,768.28 payable at $200 a month or more, depending on your ability to make restitution after you come out of prison, plus a $100 special assessment.

*What the Court will do is if you, your friends and supporters step up and pay your restitution, I will immediately convert your prison term to probation.*

You have two weeks in which to appeal this sentence if you think it is illegal. . . . Also, I'll give you voluntary surrender on or before October 19th.

Neither side objected at the time---even though the district judge gave them an opportunity to do so---but the parties now agree on appeal that the court erred in promising to "immediately convert" Plate's prison sentence to probation if she paid restitution. Indeed, the law clearly provides that a district court may not modify a prison sentence after it has been imposed unless permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *Freeman v. United States*, 564 U.S. 522, 526, 131 S. Ct. 2685, 2690 (2011) ("Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed[.]'") (quoting 18 U.S.C. § 3582(c)).

Plate filed an appeal. She also filed a motion in the district court to remain on bond pending the resolution of her appeal, which the court denied by endorsed order without explanation. Thereafter, Plate moved this Court for release pending her appeal, and she argued that the district court's denial of her motion was legally insufficient under Rule 9(a) of the Federal Rules of Appellate Procedure. A prior

9

panel of this Court agreed, stayed her surrender date, and sent the case back to the district court for the limited purpose of entering an order stating the reasons for its earlier ruling.  On remand, the district court explained that it denied Plate's motion to remain on bond (i) because she pled guilty, (ii) because she received a guideline sentence, and (iii) because of the substantial amount of money that she embezzled, "combined with the substantial outstanding restitution Plate had yet to repay."  The district court further stated that her appeal was "frivolous" and that it did not raise any substantial questions of law or fact.  This Court then denied Plate's motion for release pending appeal, lifted the stay of her surrender date, and the appeal went to oral argument, where Plate argued that her sentence violated the constitution and that it was both procedurally and substantively unreasonable.  Two days after oral argument, we *sua sponte* ordered Plate released on bond pending this decision.

## II.

Plate first argues that the district court violated her constitutional rights by conditioning her liberty on her ability to pay restitution in full.[3]

---

[3] In her brief, Plate argued that what the district judge did violated equal protection.  At oral argument, she said that it violated both equal protection and due process, which has support in the law.  For example, as the Supreme Court stated in *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585 (1956), although "[p]roviding equal justice for poor and rich, weak and powerful alike is an age-old problem," our constitutional guaranties of due process and equal protection "*both* call for procedures in criminal [cases] which allow no invidious discriminations between persons and different groups of persons.  *Both* equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American court.'"  *Id*. at 16–17, 76 S. Ct. at 589–90 (emphasis added).  Ultimately, whether Plate's claim in this case should be analyzed

10

Supreme Court precedent supports her claim.  In *Williams v. Illinois*, 399 U.S. 235, 90 S. Ct. 2018 (1970), *Tate v. Short*, 401 U.S. 395, 91 S. Ct. 668 (1971), and *Bearden v. Georgia*, 461 U.S. 660, 103 S. Ct. 2064 (1983), the Supreme Court held that it violates equal protection principles to incarcerate a person "solely because he lacked the resources to pay" a fine or restitution.  *Bearden*, 461 U.S. at 668, 103 S. Ct. at 2070.  It is apparent that Plate was treated more harshly in her sentence than she would have been if she (or her family and friends) had access to more money, and that is unconstitutional, as multiple courts have held.[4]  *See, e.g.*, *United States v. Burgum*, 633 F.3d 810 (9th Cir. 2011) (citing *Williams, Tate,* and *Bearden* for the "well established" principle that "the Constitution forbids imposing a longer term of imprisonment based on a defendant's inability to pay restitution"); *Noel v. State*, 191 So.3d 370 (Fla. 2016) (relying on the same federal cases and reaching the same conclusion).

---

as a question of due process, equal protection, or a combination of the two has no bearing on the outcome of this appeal.

[4] The facts of this case fully support the application of this constitutional principle here. As previously noted, the district judge told Plate that he "would be glad under this case to give you probation if you had paid back the restitution; but with all this restitution still outstanding, the Court just can't do it."  The judge then continued: "What the Court will do is if you, your friends and supporters step up and pay your restitution, I will immediately convert your prison term to probation."  Together, these statements unambiguously reflect that the district judge would not have sentenced Plate to prison had she been able to pay the restitution in full. Notably, the government conceded the point during oral argument as it agreed that, "based on the court's statements," it was "very clear" that if Plate---or someone acting on her behalf---had paid full restitution by the time of sentencing, "she would have walked out of that courtroom" without a prison sentence at all.

Nevertheless, despite the strength of her constitutional argument---indeed, the government did not even oppose this argument in its brief---we do not base our decision on that ground as we agree with Plate's additional argument that the sentence imposed was substantively unreasonable and an abuse of discretion. This Court "need not reach the important constitutional questions raised" in cases that can be decided on other grounds. *See United States v. Madera*, 528 F.3d 852, 859 (11th Cir. 2008) (per curiam); *see also Slack v. McDaniel*, 529 U.S. 473, 485, 120 S. Ct. 1595, 1604 (2000) ("Court[s] will not pass upon a constitutional question [] properly presented by the record, if there is also present some other ground upon which the case may be disposed of[.]") (quotation omitted).

We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010) (per curiam).[5]  In conducting this analysis, "[w]e acknowledge the institutional superiority that district courts possess with regards to sentencing, and are mindful that appellate review for reasonableness is not a license to substitute our views for those of the district court." *United States v. Hayes*, 762 F.3d 1300, 1307 (11th Cir. 2014).  We also acknowledge that we can "ordinarily" expect a district court's

---

[5] We first considered Plate's argument that the sentence was procedurally unreasonable, as we are normally required to do. *See, e.g.*, *United States v. Hayes*, 762 F.3d 1300, 1310 (11th Cir. 2014).  However, we review assertions of procedural error where there was no objection in the district court only for plain error.  *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010).  Under this standard of review, we found Plate's argument to be lacking, and it is rejected without discussion.

sentence to be reasonable if, as here, it falls within the guideline range. *United States v. Joseph*, 709 F.3d 1082, 1105 (11th Cir. 2013) (quotation omitted). Nonetheless, our review is not toothless. *See United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) ("[T]he district court's choice of sentence is not unfettered.").

District courts are required to impose sentences sufficient, but not greater than necessary, to comply with the factors and purposes set forth in § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public. *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016). In addition, the district court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victim. *Id.* (citing 18 U.S.C. § 3553(a)(1), (3)-(7)).

Notwithstanding the "considerable discretion" that district courts have in applying these factors and imposing sentence, *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation omitted), "[a] district court abuses its discretion when it (1) fails to afford consideration to the relevant factors that were

13

due significant weight, (2) *gives significant weight to an improper or irrelevant factor*, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (emphasis added) (quotation omitted). As this Court has said: "A sentence that is based entirely upon an impermissible factor is unreasonable because such a sentence does not achieve the purposes of § 3553(a)." *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008) (per curiam) (quotation omitted).

Here, the district judge abused his discretion by giving significant (indeed, *dispositive*) weight to Plate's inability to pay restitution. In sentencing Plate to prison, the district judge stated that he would be "glad under this case to give [her] probation if [she] had paid back the restitution." This statement was an obvious indication of what the judge would have done if she had paid full restitution at (or before) the sentencing hearing. Indeed, as earlier noted, the government conceded during oral argument that the record is "very clear" that is exactly what the district judge meant. *See supra* note 4. Moreover, the district judge offered to "immediately convert" Plate's prison term if she paid the restitution at a later date, which further showed that the judge gave significant weight and consideration to her inability to pay restitution at the time of sentencing. And further still, in his response to this Court's question on remand, the district judge stressed that the "substantial outstanding restitution Plate had yet to repay" was a motivating factor

14

in his original sentencing decision.  Her inability to pay restitution in full was an impermissible factor insofar as it is not among the factors listed in § 3553(a).[6]

It is true that the district judge emphasized the seriousness of Plate's offense at sentencing (*e.g.*, by noting that she took advantage of "demented" and "helpless" victims); and it is also true that the judge said that he saw no reason to depart from the guidelines.  Nevertheless, the record unambiguously shows (and, once again, the government has expressly admitted) that the district judge would have imposed a sentence of no further incarceration if Plate had been able to pay the restitution at or before the sentencing hearing.  However this sentence is characterized---whether it is viewed as a failure to "reward" for paying restitution (as the government says) or as "punishment" for not paying (as Plate says)---is irrelevant because, in either case, the district judge clearly gave significant weight to Plate's inability to pay as a factor in the sentence that he imposed, and he ended up imposing a prison term

---

[6] That is not to say that restitution is irrelevant under Section 3553.  To the contrary, as previously noted, one of the factors the district court has to consider in fashioning a sentence is "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  To say that the district court must consider the need to provide victims with restitution, however, is not the same thing as saying the court may sentence the defendant to prison *solely* because she was unable to pay the restitution in full.  If anything, imposing such a sentence arguably cuts *against* that factor.  *See* Daniel Faichney, Comment, *Autocorrect? A Proposal to Encourage Voluntary Restitution Through the White-Collar Sentencing Calculus*, 104 J. Crim. L. & Criminology 389, 405 n.76 (2014) ("Section 3553(a)(7) . . . has a utilitarian dimension in that a harsh sentence may undercut the offender's ability to work in order to repay her victims.") (citing *United States v. Rangel*, 697 F.3d 795, 803–04 (9th Cir. 2012) ("[T]he district court's goal of obtaining restitution for the victims of Defendant's offense, 18 U.S.C. § 3553(a)(7), is better served by a non-incarcerated and employed defendant.") (quotation omitted)).

15

based solely on that factor, which is not a permissible consideration under Section 3553(a).

## III.

As indicated above, we must vacate Plate's sentence and remand the case for resentencing. Because the district judge confirmed and reiterated his consideration of Plate's inability to pay restitution as a factor in his order on remand---coupled with his stated belief that Plate's arguments on appeal were "frivolous," even after having the benefit of reviewing those arguments---it appears the district court may be unable to disregard its improper consideration of that factor or, at least, that it may appear so. *See United States v. Torkington*, 874 F.2d 1441, 1446–47 (11th Cir. 1989) (per curiam). Thus, we will exercise our supervisory powers and remand the case for resentencing before a different district court judge.

**VACATED AND REMANDED FOR RESENTENCING.**