[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12852

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NIHAD AL JABERI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:21-cr-00031-RSB-CLR-1

_____

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Nihad Al Jaberi appeals his convictions and sentences for attempted smuggling, failure to notify a common carrier, and submitting false or misleading export information.  He contends that there was insufficient evidence of his guilt because law enforcement did not conduct certain surveillance and because of alleged inconsistencies in witness testimony.  He also argues that failure to notify a common carrier and submitting false or misleading export information are both lesser included offenses of smuggling and therefore asserts that his convictions violate the Double Jeopardy Clause.  Next, he argues that his due process rights were violated because the Government failed to correct false witness testimony and made prejudicial statements.  Finally, he asserts that his sentences are procedurally and substantively unreasonable because they subjected him to double jeopardy and were greater than necessary.  For the reasons below, we affirm Al Jaberi's convictions and sentences.

## I. Background

In February 2021, a federal grand jury returned a three-count indictment against Al Jaberi.  Count One charged Al Jaberi with smuggling in violation of 18 U.S.C. § 554(a) by willfully and knowingly attempting to export nine firearms from the United States, contrary to 18 U.S.C. § 922(e) and 13 U.S.C. § 305(a)(1).  Of the nine firearms listed in Count One, relevant here was the "Magnum

Research, model Desert Eagle, .44 caliber pistol." Count Two charged Al Jaberi with violating 18 U.S.C. § 922(e) by knowingly delivering firearms to a common carrier without giving the carrier written notice that the firearms were being transported or shipped. Count Three charged Al Jaberi with violating 13 U.S.C. § 305(a)(1) by knowingly causing a freight forwarder to submit false and misleading export information through a Shippers Export Declaration and an Automated Export System by falsely declaring the contents of a shipment to be only spare auto parts.

## A. Trial

During its opening statement, the Government stated that Al Jaberi contracted with a common carrier to send a shipping container to Iraq. It explained that Al Jaberi made an atypical request to load the shipping container himself. It added that although Al Jaberi told the common carrier that he was sending auto parts, he loaded nine firearms into the shipping container. The Government also stated that law enforcement searched the container before it left port and discovered the firearms, including "a .44 [caliber] Magnum Desert Eagle."

During the Government's case, Valery Baranouski—the owner of the common carrier company North Atlantic Logistics (NAL)—testified as follows. NAL contracted with Al Jaberi to ship a container with spare auto parts in it from Georgia to Iraq. Typically, NAL would load the shipping containers at their own facility. But because of the pandemic, NAL sent the container to Al Jaberi's facility for loading to reduce human contact. Al Jaberi and NAL

agreed that the container would be delivered directly to Al Jaberi on July 24, 2020, and picked up three days later. On July 27, Al Jaberi emailed a bill of lading to NAL that described the cargo only as "auto parts." The next day, NAL electronically submitted this information to the United States Customs and Border Protection's (CBP) Automated Export System (AES).

On cross-examination, defense counsel showed Baranouski a copy of the shipping container's bill of lading. He testified that the document "indicate[d] that the cargo was loaded and shipped from KHM Auto, Inc.," at "1810 Auger Drive" and confirmed that this was at Al Jaberi's instruction.

The Government also called CBP Agent Nichole Hamm to testify. Agent Hamm testified that her team searched Al Jaberi's outbound shipping container on August 4, 2020. Her team found a camp stove box wrapped in green cellophane against the back wall of the container. The box contained disassembled firearms that were also wrapped in green cellophane.

After Agent Hamm's testimony, the Government called CBP Supervisor John Wilcher. Wilcher testified that one of the firearms was "a .50 caliber Magnum Research Desert Eagle." When Wilcher testified that CBP found a magazine for "the .50-caliber Desert Eagle," the Government repeated, ".50-caliber Desert Eagle, all right." And, in the trial transcripts, the court reporter labeled the exhibit for this firearm as a ".50 caliber Magnum Research Desert Eagle."

The Government then called Special Agent Ariel Leinwand of the Department of Commerce, Bureau of Industry and Security, Office of Export Enforcement (BIS). Special Agent Leinwand testified that in October 2020, the BIS searched Al Jaberi's home. During its search, the BIS discovered three key pieces of evidence: (1) the same type of green cellophane that the firearms were wrapped in; (2) retail boxes for the firearms that were found disassembled in the shipping container; and (3) a paper retail purchase receipt for one of the firearms found in the shipping container. BIS agents also interviewed Al Jaberi. According to Special Agent Leinwand's testimony, Al Jaberi admitted that he shipped these firearms to Iraq without informing the common carrier of the firearms. Al Jaberi also admitted that the firearms were his and that he packed them in the container without informing the common carrier.

On cross-examination, Special Agent Leinwand testified that the BIS did not investigate KHM Auto. Inc. or 1810 Auger Drive. And Special Agent Leinwand did not recall uncovering any communication between Al Jaberi and individuals in Iraq about the shipment.

The Government's final witness was BIS Special Agent Jonathan Gray. During his testimony, Special Agent Gray recognized an exhibit as "the Magnum Research, Model Desert Eagle .44-caliber." The Government showed Special Agent Gray several photographs and he testified as follows. The series of photos came from Al Jaberi's cellphone and showed the container being progressively

packed with cargo.  Al Jaberi's cellphone also contained photos of firearms discovered in the shipping container.  During the search of Al Jaberi's home, law enforcement took photos that showed a roll of green cellophane wrap and cases matching the firearms.

On cross-examination, Special Agent Gray testified to the following.  In February 2021, the BIS arrested Al Jaberi and immediately interviewed him.  During the interview, Al Jaberi admitted that he loaded the container.  Special Agent Gray was shown a photo of the shipping container, in which it appeared that the stove box containing firearms was not located "all the way in the back"; instead, there were "vehicles behind it."

Before closing arguments, Al Jaberi moved for acquittal under Rule 29 of the Federal Rules of Criminal Procedure[1] and argued that there was insufficient evidence of his guilt.  Al Jaberi asserted that no government witness identified him as the defendant.  He asserted that there was insufficient proof that he loaded the container, and that any statement that he made regarding having done so was "contradicted by the other evidence."  He posited that he never certified the container's contents because another individual did, and he had no reason to know that NAL required written notice of the firearms.  He also argued that Baranouski's testimony contradicted the Government's assertion that Al Jaberi knowingly

---

[1] Rule 29(a) states in relevant part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).

caused the filing of false or misleading export documentation. The District Court denied Al Jaberi's motion.

In its closing argument, the Government stated that Al Jaberi tried to smuggle "a .44-caliber Desert Eagle." It asserted that Al Jaberi "paid through some electronic payment Mr. Eugene McNair $525, presumably for" one of the firearms. The Government also posited that Al Jaberi "removed the actual camping stove from the box," and in its place, CBP found dissembled firearms.

Before jury deliberation, the District Court reminded the jurors that they "must consider only the evidence" and that "anything the lawyers sa[id was] not evidence." *United States v. Al Jaberi*, No. 4:21-cr-00031-RSB-CLR-1, Doc. 114 at 68:14–17 (S.D. Ga. Nov. 8, 2022). And the District Court explained the final element of smuggling, in violation of 18 U.S.C. § 554(a), required that Al Jaberi knowingly exported a firearm

> in violation of at least one of the laws listed in the indictment, that is, A, that the defendant knowingly delivered or caused to be delivered a container containing the firearms to a common carrier for international shipment without providing written notice of the presence of the firearms to the carrier . . . . That's 18 [U.S.C. §] 922(e); or, B, that the defendant knowingly filed or caused another to file inaccurate or misleading information through the United States Shipper's Export Declaration or [AES], and that's 13 [U.S.C. §] 305.

*Id.*, Doc. 114 at 74:2–14.  The jury found Al Jaberi guilty on all counts.

### B. *Sentencing Hearing*

The U.S. Probation Office prepared a presentence investigation report (PSR) for the sentencing hearing.  The PSR grouped Al Jaberi's offenses and calculated a base offense level of twenty-six under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2M5.2(a)(1) (U.S. Sent'g Comm'n 2021).  The PSR recommended that Al Jaberi receive a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice, resulting in a total offense level of twenty-eight.

When the offense level was combined with a criminal history category of I, the PSR recommended a Guideline range of seventy-eight to ninety-seven months' imprisonment followed by one to three years' supervised release.  Count One carried a maximum term of ten years' imprisonment, while Counts Two and Three each carried a maximum term of five years each.  Each count authorized the court to impose a term of supervised release of not more than three years, with multiple terms of supervised released running concurrently.

The PSR also stated that there was no identifiable victim of Al Jaberi's conduct.  As to the basis for the obstruction of justice enhancement, the PSR noted that Al Jaberi requested another individual to (1) "create a false bill of sale for the firearms" and (2) lie to law enforcement to hide the origin of the firearms.  Regarding Al Jaberi's personal characteristics, the PSR stated that he married

his wife in 2007 and that he has three minor children from this marriage.

Al Jaberi objected to the facts as alleged in the entirety of the PSR's offense conduct section, and the factual allegations underlying his two-level enhancement for obstruction of justice.

In his sentencing memorandum, Al Jaberi stated that "[d]espite the image portrayed at trial, [he] is known by others as a kind, loving, and helpful husband and father who has never engaged in criminal conduct." He noted his personal history as an immigrant who "save[d] his family after receiving threats from the militia" in Iraq and obtained legal permanent resident status in the United States in 2016. He added that he "has lived [a] life contrary to the stereotypical smuggler" and "had too much to give up to intentionally seek to hurt anyone." He requested that the court consider that he was "unduly prejudiced" by a Government witness's misstatement that the Desert Eagle was .50 caliber, because "a .50 caliber firearm sounds more militaristic than a .44 caliber."

Al Jaberi also stated that "there were too many inconsistencies . . . for him to have been convicted, including . . . [t]he location of the stove box containing the disassembled firearms." He posited that he should not have been convicted because "the [G]overnment did not investigate the loading company . . . even though the [G]overnment had documents . . . which showed the loading company's involvement and responsibility for loading the container and for making the reports . . . to be forwarded to the shipping company." He also submitted five letters from family and friends

describing his good character.  A letter from Al Jaberi's wife described him as "a loving husband and father . . . whose wife and kids need him."

At the sentencing hearing, Al Jaberi maintained his objections to the factual allegations in the PSR but stated that there was "no reason to litigate [the objections] today, particularly given that the objections d[id] not affect the [G]uidelines."  The court said that it "reviewed the entirety of the record" and overruled each of Al Jaberi's objections to the PSR.  And it noted that Al Jaberi "attempt[ed] to obstruct justice by creating false documents, as set forth in the [PSR]."

The District Court determined Al Jaberi's total offense level to be twenty-eight and criminal history category to be I.  This resulted in a Guideline range of seventy-eight to ninety-seven months' imprisonment, one to three years' supervised release, and a $25,000 to $250,000 fine.

As for the 18 U.S.C. § 3553 factors,[2] the Government asserted that Al Jaberi continued to refuse to accept responsibility

---

[2] Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from the defendant's further crimes, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the sentencing guidelines' recommended range; (5) any pertinent policy statement issued by the Sentencing

22-12852                Opinion of the Court                11

despite the strong evidence of his guilt and argued that the firearms at issue included "impressive powerful handguns . . . intended for something violent and unlawful." The Government requested ninety months' imprisonment followed by three years of supervised release.

Al Jaberi noted his loving family, community-mindedness, and lack of criminal history. He added that there was no identifiable victim of his conduct and that he would likely be deported and separated from his family following his sentence. Al Jaberi argued that his case involved "a mere nine firearms" and that the § 3553 factors would be satisfied by a seventy-eight-month sentence.

Prior to rendering its sentence, the District Court stated that it had considered the parties' arguments, the PSR, Al Jaberi's sentencing memorandum, and the § 3553 factors. The District Court judge also stated that he was familiar with Al Jaberi's case because he presided at trial. The court sentenced Al Jaberi to "94 months as to Count 1 and 60 months as to each of Counts 2 and 3, all to be served concurrently" and three years' supervised release on all counts to be served concurrently. The court also ordered that Al Jaberi be released to Immigrations and Customs Enforcement for deportation proceedings following his release.

Although the District Court recommended that Al Jaberi be given credit for the time he had served in custody, it did "not find

---

Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)–(7).

any reason to depart from the sentence called for by application of the [G]uidelines." The District Court added that it would impose this sentence "regardless of the [G]uidelines" because it was an appropriate sentence. And it explained that Al Jaberi "continue[d] to lie" despite "an overwhelming amount of evidence" of his guilt. The court then asked if there were any objections to the sentence, and Al Jaberi replied, "No objection . . . , other than those previously stated." Al Jaberi timely appealed.

## II.  Legal Standards

A few different standards govern our review. First, "[w]e review the sufficiency of the evidence to support [a defendant's] conviction de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam). "The district court's denial of [a] motion[] for judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.* But when a defendant challenges the sufficiency of the evidence on a ground not argued before the district court, we review for plain error. *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016). "To establish plain error, a defendant must show (1) error; (2) that is plain; (3) that affects his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lewis*, 40 F.4th 1229, 1246 (11th Cir. 2022).

Second, "[w]hile we usually review *de novo* claims of double jeopardy, we review issues not properly raised before the district court, such as the instant one, for plain error." *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009) (citation omitted). "When 'the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.'" *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (per curiam) (quoting *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (per curiam)).

Third, "[t]ypically, we review . . . a claim of prosecutorial misconduct *de novo*." *United States v. Horner*, 853 F.3d 1201, 1206 (11th Cir. 2017). "But when, as here, the defendant[] do[es] not object at trial or otherwise raise the issue before the district court, . . . we review only for plain error." *Id.* "Reversal on the basis of prosecutorial misconduct requires that the misconduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013) (quoting *United States v. Woods*, 684 F.3d 1045, 1065 (11th Cir. 2012) (per curiam)).

Last, we review the reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "[T]he party challenging the sentence bears the burden to show that it is 'unreasonable in light of the record and the [§] 3553(a) factors.'" *United States v. Shabazz*, 887 F.3d 1204,

1224 (11th Cir. 2018) (quoting *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008)).

## III.  Discussion

Al Jaberi makes four arguments on appeal: (1) there was insufficient evidence to convict him; (2) his convictions and sentences violate the Double Jeopardy Clause; (3) the Government's alleged prosecutorial misconduct—i.e., its misstatements and failure to correct testimony—violated his due process rights; and (4) his sentence was procedurally and substantively unreasonable. None have merit.  We review and reject each argument in turn.

### A.  Sufficiency of the Evidence

Al Jaberi argues that there was insufficient evidence to sustain his convictions and that the District Court erred by denying his motion for judgment of acquittal.  He asserts that law enforcement neither surveilled nor investigated the location where the shipping container was loaded.  Al Jaberi adds that the Government failed to offer evidence about any communications between him and anyone in Iraq about the firearms.  Last, he contends that the Government witnesses offered inconsistent testimony about the location of the box containing the firearms.  We disagree.

Although Al Jaberi moved for a judgment of acquittal, he did so on different grounds than those raised here.  We therefore review his arguments here for plain error.  *See Baston*, 818 F.3d at 664.

The District Court did not err—plainly or otherwise—by denying Al Jaberi's motion for acquittal.  A reasonable juror could

have concluded that the evidence established his guilt on all three counts beyond a reasonable doubt.[3]  The Government presented evidence that Al Jaberi admitted that the firearms discovered in the shipping container were his, that the shipping container was destined for Iraq, and that he did not inform the shipper that the cargo included firearms.  The Government also presented evidence, through witness testimony and photos, that Al Jaberi hid the firearms in the container without disclosing their existence to the common carrier and submitted false information about the cargo's contents that was eventually uploaded to AES.  And the Government submitted evidence that the firearms' cases, a physical receipt for one of the firearms, and the same green cellophane wrap as was found in the container were all found in Al Jaberi's home.

That Al Jaberi hid the firearms within his cargo without disclosing their existence was strong circumstantial evidence of his criminal intent.  *Cf. United States v. Singer*, 963 F.3d 1144, 1166 (11th Cir. 2020) ("Singer's failure to tell United States law enforcement about the items raised a reasonable inference that he was trying to hide the items from United States officials . . . .").  And, in the

_____

[3] As an aside, Al Jaberi's insufficient evidence argument is inadequate.  His brief omits a distinct statement of facts section, which was (and continues to be) required under our rules at the time his brief was filed.  *See* 11th Cir. R. 28-1(i)(ii) (Dec. 1, 2022).  Nor does Al Jaberi indicate which of the three counts lacked sufficient evidence or how the evidence was insufficient on at least one element.  As "[t]he Seventh Circuit memorably said . . . appellate judges 'are not like pigs, hunting for truffles buried in briefs.'"  *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

context of photos showing that Al Jaberi loaded the container, there is sufficient proof that Al Jaberi took a substantial step toward exporting the firearms in violation of U.S. law. *See id.* at 1160–61; 18 U.S.C. § 554(a). Al Jaberi's failure to disclose the firearms on the bill of lading's cargo description—which was later uploaded to AES—is also sufficient to sustain his convictions under 18 U.S.C. § 922(e) and 13 U.S.C. § 305(a)(1).

Al Jaberi's assertions that the evidence was insufficient because law enforcement did not surveil the loading location or because the Government provided no proof of any communications between him and anyone in Iraq are meritless. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990).

Al Jaberi's argument about the alleged inconsistent witness testimony goes toward the weight and credibility of the evidence—not its sufficiency. We see nothing in the witness testimony to overcome the substantial deference we afford to the jury's credibility determinations. *See United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015). Nothing in the testimony was "contrary to the laws of nature, or . . . so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id.* (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)).

22-12852               Opinion of the Court                    17

In short, there was sufficient evidence to convict Al Jaberi on all three charges.  And the District Court did not err by denying Al Jaberi's motion.

### B. Double Jeopardy

Al Jaberi next argues that the District Court committed plain error because his convictions violate the Double Jeopardy Clause. He contends that Counts Two and Three are lesser included offenses of Count One under the *Blockburger* test.[4]  In support of this argument, Al Jaberi relies on *Singer*.  According to Al Jaberi, *Singer* held that, to establish smuggling, the Government must prove that the defendant actually violated all essential elements of the underlying "law or regulation" that rendered the exportation illegal under 18 U.S.C. § 554(a).  Embedded within his double jeopardy argument, Al Jaberi also argues that he was severely prejudiced by ineffective trial counsel because his trial counsel did not raise the double jeopardy issue.[5]  We disagree.

---

[4] *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[5] Because Al Jaberi's ineffective assistance of counsel claim is "not designated as [a] discrete issue[] in his brief to this Court and [is] not supported by . . . substantive analysis, [it is] not properly before us."  *United States v. Goodwin*, 765 F.3d 1306, 1319 n.5 (11th Cir. 2014); *see also Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (explaining that an appellant abandons a claim by failing to list it in his statement of issues, failing to "devot[e] a discrete section of his argument to [it]," raising it "in a perfunctory manner without supporting arguments and authority," or embedding it within a larger argument (first quoting *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013), *abrogated on other grounds by Nasrallah v. Barr*, 140 S. Ct. 1683 (2020); then citing *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1413 n.7 (11th Cir. 2011);

"The Fifth Amendment's Double Jeopardy Clause guarantees that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Bobb*, 577 F.3d at 1371 (quoting U.S. Const. amend. V). "This guarantees against . . . multiple punishments for the same offense." *Id.* Generally, "when a defendant has violated two different criminal statutes, the Double Jeopardy Clause is implicated when both statutes prohibit the same act or transaction or when one act is a lesser included offense of the other." *Id.*

To determine whether dual statutory provisions prohibit the same offense we apply the *Blockburger* test. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). The *Blockburger* test analyzes "whether each provision requires proof of a fact which the other does not." *Id.* "Our analysis focuses on the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial." *Bobb*, 577 F.3d at 1372. "Specifically, we need not examine the facts alleged in the indictment to support the counts nor the 'practical significance' of the theories alleged for

and then citing *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003)).

Moreover, "[w]e will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court [neither] entertain[ed] the claim nor develop[ed] a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). "The preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion 'even if the record contains some indication of deficiencies in counsel's performance.'" *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

22-12852               Opinion of the Court                    19

each count." *United States v. Hassoun*, 476 F.3d 1181, 1186 (11th Cir. 2007).  That is true even when, as here, "charges are interrelated, [but] are not interdependent." *Id*. at 1188.[6]

Al Jaberi has not shown that the District Court plainly erred for two reasons.  First, Al Jaberi has not identified that the purported error was plain.  To do so, he would have to cite precedent from the Supreme Court or this Court holding that the convictions on Count One and either Count Two or Three violate the Double Jeopardy Clause.  *See United States v. Campo*, 840 F.3d 1249, 1267 (11th Cir. 2016).  Al Jaberi has not cited any such cases.

Second, Al Jaberi has shown no error under the *Blockburger* test.  A review of the three statutes under which Al Jaberi was convicted reveals that each statute entails different elements from the others.

---

[6] In *Hassoun*, we acknowledged that

> there may remain a few specific circumstances in which we are required to look beyond the elements of the offenses in order to assess potential multiplicity problems, such as in a "continuing criminal enterprise" prosecution where a drug conspiracy is separately charged, or in cases where two counts are charged under the same statutory provision.

476 F.3d 1181, 1186–87 (11th Cir. 2007).  These circumstances are not present here.

Count One—the attempted smuggling charge—alleged that Al Jaberi violated 18 U.S.C. § 554(a), which provides:

> Whoever fraudulently or knowingly . . . attempts to export or send from the United States, any . . . object contrary to any law . . . of the United States . . . , shall be fined under this title, imprisoned not more than 10 years, or both.

Count Two—the failure to notify a common carrier charge—alleged that Al Jaberi violated 18 U.S.C. § 922(e), which states:

> It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation . . . , any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped . . . .

And Count Three—the submitting a false or misleading export information charge—alleged that Al Jaberi violated 13 U.S.C. § 305(a)(1), which provides:

> Any person who . . . knowingly submits false or misleading export information through . . . the Automated Export System (AES) shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years, or both.

To recap, § 554(a) penalizes the specific act of attempting to illegally export contraband abroad. *See* 18 U.S.C. § 554(a).

22-12852                Opinion of the Court                21

Whereas § 922(e) penalizes the failure to provide a common carrier with written notice that cargo contains a firearm. *Id.* § 922(e). And § 305(a)(1) penalizes the act of submitting false or misleading export information through AES. 13 U.S.C. § 305(a)(1). Though there is "substantial overlap in the proof offered to establish the[se] crimes," a conviction under these three statutes does not violate the Double Jeopardy Clause. *See Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975).

Contrary to Al Jaberi's argument, *Singer* does not alter our analysis.[7] *Singer* neither involved a Double Jeopardy Clause challenge nor held that, to establish attempted smuggling, the Government must prove an actual violation of the underlying law or regulation that rendered the exportation illegal under § 554(a).

Al Jaberi is correct about one thing: in discussing the § 554(a) smuggling conviction, *Singer* stated "we hold that, *as the government charged Singer*, it was required to prove both that Singer violated 50 U.S.C. § 1705 and 15 C.F.R. § 746.2(a) and that Singer knew of the facts that made his conduct a violation of these provisions." 963 F.3d at 1158 (emphasis added). But the issue in *Singer* was whether the defendant had to know that his attempted smuggling

---

[7] In *Singer*, the defendant was charged (and convicted) under 18 U.S.C. § 554(a) for attempting to smuggle modems to Cuba without a license contrary to 50 U.S.C. § 1705 and 15 C.F.R. § 746.2(a). *United States v. Singer*, 963 F.3d 1144, 1148, 1155 (11th Cir. 2020). Section 1705(c), which requires a mens rea of willfulness, makes it unlawful for a person to violate or attempt to violate "any license, order, regulation, or prohibition." 50 U.S.C. § 1705(c). And 15 C.F.R. § 746.2(a) requires a license to export certain items to Cuba.

violated the law. *Singer* did not ask whether the Government had to prove the defendant violated each of the elements underlying the law or regulation he attempted to violate. So this holding is inapplicable.

Al Jaberi's interpretation of *Singer* contradicts the law of attempt. Attempt is an inchoate crime that never requires the Government to prove all the essential elements of the completed offense. As we noted in *Singer*, "[t]o prove attempt, the government must show two things: that the defendant (1) had 'the specific intent to engage in criminal conduct with which he was charged; and (2) had taken substantial steps toward to the commission of the offense that strongly corroborates his criminal intent.'" *Id.* (quoting *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018), *abrogated on other grounds by United States v. Taylor*, 596 U.S. 845 (2022)). The Government need not prove all the elements of § 554(a), let alone all the elements of the underlying law or regulation that made the attempted smuggling illegal. *See, e.g.*, *United States v. Rivero*, 889 F.3d 618, 623 (9th Cir. 2018) ("The government did not have to prove the elements necessary to convict Rivero under [22 U.S.C.] § 2778(c), because conviction under § 2778(c) is not an element of the offense violating § 554(a)."); *United States v. Cardenas*, 810 F.3d 373, 374 (5th Cir. 2016) (per curiam) (holding similarly).

Al Jaberi has not shown that his convictions under 18 U.S.C. §§ 554(a), 922(e), and 13 U.S.C. § 305(a)(1) violate the Double Jeopardy Clause. Nor has he shown that the District Court plainly erred by sentencing him for his convictions.

### C. Due Process

Al Jaberi also argues that his due process rights were violated because of the Government's alleged prosecutorial misconduct. He asserts that the Government (1) failed to correct false testimony and (2) made misstatements in its opening and closing arguments. Neither argument is persuasive.

### i. Failure to Correct False Testimony

Al Jaberi first claims that he was unduly prejudiced by CBP Supervisor Wilcher's testimony that the Desert Eagle was a .50 caliber, not a .44 caliber as alleged in the indictment. He asserts that "a .50 caliber firearm is definitely more militaristic than a .44 caliber firearm and made him more guilty in the jury's mind." And Al Jaberi argues that the Government's failure to correct Wilcher's testimony "was material in that the Government focused on the 'high caliber' aspect" and "apparently influenced the court reporter" to erroneously label the Government's trial exhibit as a .50 caliber Magnum Research Desert Eagle.

The Supreme Court has held that the Government's failure to correct false evidence can violate due process rights, and a defendant may challenge such violations via a *Giglio* claim. *See Giglio v. United States*, 405 U.S. 150, 153–55 (1972); *see also United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001). To prevail on a *Giglio* claim, the defendant must establish that (1) the Government knowingly used perjured testimony, or failed to correct what it later learned was false testimony, and (2) the falsehood was material. *Dickerson*, 248 F.3d at 1041. "Perjured testimony 'must be

given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.'" *Horner*, 853 F.3d at 1206 (quoting *United States v. Singh*, 291 F.3d 756, 763 n.4 (11th Cir. 2002)). "[F]alse testimony is deemed material if there is a reasonable likelihood the false testimony could have affected the judgment of the jury." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010).

As noted above, Al Jaberi preserved no due process claim. We therefore review his due process claim for plain error. *See United States v. Nixon*, 918 F.2d 895, 904–05 (11th Cir. 1990). Like his double jeopardy claim, Al Jaberi's due process claim fails under plain-error review. Al Jaberi has not cited any binding precedent that directly holds that misstating the caliber of a firearm the defendant was convicted of smuggling constitutes prosecutorial misconduct, much less violates due process. So we cannot say that any purported error is plain.

Nor can we say any error occurred. Al Jaberi has not alleged—much less demonstrated—either that Wilcher's misstatement was willful or that the prosecutor's failure to correct it was knowing, rather than reckless or negligent. *See Dickerson*, 248 F.3d at 1041; *Horner*, 853 F.3d at 1206. How could he? The prosecutor, Special Agent Gray, and the Government's Exhibit 19 all described the firearm as a .44 caliber. These accurate descriptions show that Wilcher's misstatement and the prosecutor's failure to correct it, were honest mistakes.

22-12852                Opinion of the Court                25

What's more, Wilcher's misstatement was immaterial. The illegality of Al Jaberi's actions did not depend on the caliber of the firearms. Instead, his actions were illegal because he tried to smuggle firearms abroad. There is no "reasonable probability" that the jury would have acquitted Al Jaberi but for Wilcher's misstatement. *See United States v. Nerey*, 877 F.3d 956, 970 (11th Cir. 2017). Al Jaberi has not shown that Wilcher's misstatement and the prosecutor's failure to correct amounted to plain error, such that a due process violation occurred.

### ii.  Prosecutor's Comments

Al Jaberi next argues that the Government misstated that he made the unusual request to load the shipping container, when it was NAL that unilaterally decided to have Al Jaberi load it. He also claims that the Government's statement that he removed the camping stove and replaced it with firearms lacked evidentiary support. Last, Al Jaberi contends that the Government's closing argument contained "unwarranted speculations, with alarming words such as 'presumably.'" For instance, he cites the prosecutor's comment that Al Jaberi "paid through some electronic payment Mr. Eugene McNair $525, *presumably* for the Baretta APX."[8] Per Al Jaberi, these comments, individually or collectively, give rise to a due process violation.

---

[8] According to Special Agent Gray, McNair was the original purchaser of the Baretta handgun.

"A prosecutor's comments in [opening statements and] closing [arguments] must be viewed in the context of the trial as a whole." *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014). Opening statements and closing arguments "assist the jury in analyzing the evidence, and although a prosecutor may not exceed the evidence presented at trial during [his or] her closing argument, [he or] she may state conclusions drawn from the trial evidence." *Id.* "Yet, a prosecutor is free to suggest during oral argument what the jury should conclude from the evidence before it." *United States v. Rivera*, 780 F.3d 1084, 1100 (11th Cir. 2015).

"Prosecutorial misconduct justifies a new trial only if the remarks in question were both (a) improper and (b) prejudicial to the defendant's substantial rights." *Nerey*, 877 F.3d at 970. "A prosecutor's remarks, suggestions, insinuations, and assertions are improper when they are calculated to mislead or inflame the jury's passions." *United States v. Azmat*, 805 F.3d 1018, 1044 (11th Cir. 2015). And "[s]ubstantial rights are prejudiced when there is 'a reasonable probability . . . that, but for the remarks, the outcome of the trial would have been different." *Nerey*, 877 F.3d at 970 (omission in original) (quoting *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006)). "Yet, substantial evidence establishing guilt may counteract claims of prejudice." *Id.*

Al Jaberi also failed to preserve this argument, so we review it for plain error. *See United States v. Goldstein*, 989 F.3d 1178, 1199 (11th Cir. 2021). Here too, Al Jaberi fails to show plain error. He points to no binding precedent that holds that the prosecutor's

purported mischaracterizations were either improper or prejudicial. Any purported error therefore is not plain.

Nor are we convinced there was error for two reasons. First, "because the statements of counsel are not evidence, the district court may rectify improper prosecutorial statements by instructing the jury that only the evidence in the case is to be considered." *United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992). That is what the District Court did here. It instructed the jury that it: "must consider only the evidence admitted that [the court had] admitted in the case" and explained that "[e]vidence includes the testimony of witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you." *Al Jaberi*, No. 4:21-cr-00031-RSB-CLR-1, Doc. 114 at 68:14–17.

Second, the prosecutor's alleged misstatements about Al Jaberi's request to load the container, the camping stove, and the $525 payment are largely irrelevant or are logical inferences from the trial evidence. The prosecutor's comment that Al Jaberi wanted to load the container is immaterial to the crimes charged. Al Jaberi twice admitted that he loaded firearms into the shipping container. That was the crux of the crime—not *where* he loaded them, *who* chose that location, or the reasons behind those choices. We cannot say that the prosecutor's comment changed the outcome of the trial. *See Nerey*, 877 F.3d at 970.

As for the prosecutor's camping stove and payment comments, both are logically inferred from supporting evidence. A prosecutor "may state conclusions drawn from the evidence."

*United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997). The evidence showed that Al Jaberi put the firearms into a box that was originally labeled as containing a camping stove and loaded that box into the shipping container. It could be inferred that Al Jaberi removed the stove before putting the firearms in the box. The evidence also showed that McNair bought the Baretta APX 9-mm pistol on June 13, 2018, Al Jaberi paid him $525 on April 6, 2019, and Al Jaberi searched the internet for spare parts for the same gun on April 29 and May 8, 2020. It was reasonable to infer that Al Jaberi "presumably" paid McNair for the gun.

We are satisfied that the prosecutor's comments did not violate Al Jaberi's due process rights. The prosecutor's comments were not calculated to mislead or inflame the jury's passions. And Al Jaberi has not shown that plain error occurred.

### D.  Sentencing Reasonableness

Al Jaberi's final argument concerns his sentences. He argues that his sentences are procedurally unreasonable because they were imposed under simultaneous convictions thereby violating the Double Jeopardy Clause. He also argues that his ninety-four-month sentence is substantively unreasonable because it "overstates the seriousness of what is attributable to him" and "is greater than necessary to meet the need to protect the public" because he presents a low risk of recidivism based on statistics of similarly aged individuals. He adds that his personal characteristics, lack of minimum sentences for his convictions, and the lack of any

"identifiable victim" demonstrate that a lower sentence would be adequate.  We disagree.

In reviewing the reasonableness of a sentence, we first consider whether the district court committed a procedural error. *See Gall*, 552 U.S. at 51.  A district court commits a procedural sentencing error when it imposes a sentence based on clearly erroneous facts, fails to calculate (or improperly calculates) the Guidelines range, fails to consider the § 3553(a) factors, treats the Guidelines as mandatory, or fails to explain the chosen sentence.  *Id.*

After ensuring that a sentence is procedurally sound, we then consider whether it is substantively reasonable.  *Id.*

> District courts are required to impose sentences sufficient, but not greater than necessary, to comply with the factors and purposes set forth in § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public.

*United States v. Plate*, 839 F.3d 950, 957 (11th Cir. 2016); 18 U.S.C. § 3553(a)(2).  And district courts "must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable [G]uidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victim."  *Id.*; 18 U.S.C. § 3553(a)(1), (3)–(7).

"[T]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." *United States v. Butler*, 39 F.4th 1349, 1356 (11th Cir. 2022) (quoting *United States v. Martinez-Gonzalez*, 663 F.3d 1305, 1311 (11th Cir. 2011) (per curiam)). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Suarez*, 893 F.3d 1330, 1337 (11th Cir. 2018) (quoting *United States v. Blake*, 868 F.3d 960, 978 (11th Cir. 2017)).

A district court's failure to specifically mention certain mitigating factors "do[es] not compel the conclusion that the sentence crafted in accordance with the § 3553(a) factors was substantively unreasonable." *See United States v. Snipes*, 611 F.3d 855, 873 (11th Cir. 2010). "The district court is not required to explicitly address each of the § 3553(a) factors or all of the mitigating evidence." *United States v. Taylor*, 997 F.3d 1348, 1354 (11th Cir. 2021) (per curiam). Instead, "[a]n acknowledgment the district court has considered the defendant's arguments and the § 3553(a) factors will suffice." *Gonzalez*, 550 F.3d at 1324.

We will vacate a district court's sentence as substantively unreasonable "only if we are left with the 'definite and firm' conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that is

outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (quoting *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc)). "A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014).

The District Court did not abuse its discretion because Al Jaberi's sentence was both procedurally and substantively reasonable. Al Jaberi's sentence was procedurally reasonable because, as explained above, there was no double jeopardy violation.[9] And his sentence was substantively reasonable because the District Court did not fail to consider relevant factors due significant weight, give significant weight to an improper factor, or clearly err in considering the proper factors. *See Irey*, 612 F.3d at 1189. The District Court stated that it had considered the parties' arguments, the PSR, Al Jaberi's sentencing memorandum, and the § 3553 factors. True, the court emphasized Al Jaberi's untruthfulness despite the substantial evidence of his guilt. But the court permissibly attached greater weight to Al Jaberi's personal characteristics and his offense conduct. *See United States v. Kuhlman*, 711 F.3d 1321, 1327 (11th Cir. 2013) ("[S]ignificant reliance on a single factor does not necessarily render a sentence unreasonable."). And though the District Court did not explicitly discuss Al Jaberi's mitigating

---

[9] As this is the only procedural reasonableness argument Al Jaberi makes, he has abandoned any other challenge to the procedural reasonableness of his sentences. *See Sappupo*, 739 F.3d at 681–82.

evidence, it was not required to. *See Snipes*, 611 F.3d at 873. In any event, the District Court stated that it considered Al Jaberi's sentencing memorandum, which presented his mitigation evidence. Al Jaberi's ninety-four-month sentence was also within the Guidelines' range, and it was twenty-six months below the statutory maximum, both of which support our conclusion that his sentence is reasonable. *See Stanley*, 739 F.3d at 656.

In short, we discern no abuse of discretion. Al Jaberi's below-Guidelines sentence was both procedurally and substantively reasonable.

## IV. Conclusion

Al Jaberi has not shown that the District Court erred. The evidence was sufficient, such that the District Court properly denied Al Jaberi's motion for acquittal. And we identify no double jeopardy or due process violations. We also conclude that the District Court did not abuse its discretion in sentencing Al Jaberi. Al Jaberi's convictions and sentences are therefore affirmed.

**AFFIRMED.**