**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10195

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

OSCAR PENA-SANREGRE,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20117-MD-1

————————————

Before NEWSOM, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Oscar Pena-Sanregre was sentenced to 46 months' imprisonment, followed by two years of supervised release, for distribution of five grams or more of methamphetamine (meth) and possession

with intent to distribute five grams or more of meth, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). He appeals his sentence, arguing that it is substantively unreasonable because the District Court failed to give adequate weight to his mitigating factors and created a sentencing disparity between himself and similarly situated defendants convicted of meth crimes. We disagree and affirm.

## I.

Pena-Sanregre sold meth to a confidential source four separate times between January 21, 2024, and March 6, 2024. On March 6, the source gave Pena-Sanregre $2,000, and Pena-Sanregre gave the source 35.4 grams of meth. They agreed that Pena-Sanregre owed the source more meth for that price and arranged a second meeting for later that day to complete the deal.

Law enforcement surveilled the second meeting spot, but Pena-Sanregre drove away before the source could meet him. The agents followed Pena-Sanregre and conducted a traffic stop. During the stop, Pena-Sanregre verbally consented to the agents' search of his car, which uncovered 10 small plastic bags containing 13.2 grams of crystal meth. Pena-Sanregre consented to a search of his residence later that day, where the agents uncovered 11.01 grams of crystal meth and 42.37 grams of cocaine in his bedroom dresser.

Pena-Sanregre was subsequently charged with distribution of a controlled substance and possession with intent to distribute a

controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). He pleaded guilty.[1]

Pena-Sanregre's presentence investigation report (PSI) calculated a base offense level of 30 and added a 2-point reduction for his status as a zero-point offender, another 2-point reduction for qualifying for the federal safety valve,[2] and a 3-point reduction for his acceptance of responsibility.[3] This left Pena-Sanregre with a total offense level of 23. He also had zero criminal history points, giving him a criminal history category of I. His Guidelines imprisonment range was 46 to 57 months' imprisonment followed by 2 to 5 years of supervised release.

---

[1] The indictment contained four counts, two charged Pena-Sanregre with distribution and two charged him with possession with intent to distribute. He pleaded guilty to one count of distribution and one count of possession with intent to distribute. The Government dismissed the other two counts.

[2] The PSI originally stated that Pena-Sanregre did not meet the safety valve requirements. Pena-Sanregre objected, and the Government did not oppose the objection. An update to the PSI was filed, adding the safety valve reduction. If a defendant meets the requirements for the federal safety valve reduction, then "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). The statutory mandatory minimum for Pena-Sanregre's crime was 60 months' imprisonment. This minimum did not apply to Pena-Sanregre, because he met the safety valve requirements.

[3] This was composed of 2-point reduction under § 3E1.1(a) of the Sentencing Guidelines and a 1-point reduction under § 3E1.1(b).

Pena-Sanregre objected to the PSI for, as relevant here, failing to note any reasons qualifying for downward variance or departure from the Guidelines range and for the sentencing disparity the Guidelines range would create between Pena-Sanregre and similarly situated defendants.[4] As support for the former, he referenced his history of mental health issues and his family's difficult financial circumstances. For the latter, he cited national statistics from the Judiciary Sentencing Information database showing average and median sentences of 30 months' imprisonment for defendants convicted of meth crimes who shared Pena-Sanregre's offense level and criminal history category.

Pena-Sanregre also separately moved for a downward variance from the Guidelines range. He cited the same reasons he gave for his objections to the PSI along with the small scale of his distribution, his acceptance of responsibility, and his compliance with pretrial supervision.

At sentencing, the Court adopted the Guidelines range calculated in the PSI of 46 to 57 months' imprisonment. Pena-Sanregre renewed his previous arguments, noted that he had led a largely crime-free life, explained what led him to commit the instant offense, discussed his relationships with members of his

---

[4] His other objections were to the omission of the safety valve reduction as previously mentioned and to the references to dismissed and nolle prosequi charges in his criminal history. The Court later noted that such references did not affect the Guidelines range, and it confirmed that Pena-Sanregre objected to those references only to ensure that they did not improperly affect the Court in its sentencing decision.

family and how he now faces the risk of deportation, and requested a 30-month sentence. He also allocuted, apologizing for his conduct.

The Government requested a 46-month sentence, stating that the calculated Guidelines range already accounted for Pena-Sanregre's lack of criminal history and acceptance of responsibility, that his mental health concerns were not a basis for a lower sentence, and that the impact on his family of his incarceration was the "unfortunate[] consequence" of being incarcerated. The Government also noted Pena-Sanregre's "repeated [offense] conduct over . . . approximately two months," that crystal meth is "highly addictive and dangerous," and that Pena-Sanregre chose to engage in this conduct despite being 57 years old and having a stable family situation. Finally, the Government argued that the statistical data Pena-Sanregre presented was unpersuasive because it did not distinguish between the circumstances of the transactions. As such, it was unknown whether the statistics reflected people who engaged in repeated conduct, like Pena-Sanregre, or in one-off sales.

After hearing from both sides, the Court overruled all objections relevant for this appeal, finding that no departures from the Guidelines range were warranted.[5] It then moved to the motion for downward variance, stating that it "considered [Pena-Sanregre's] arguments in support of a variance" and that it was "going to talk a little bit about the [sentencing] factors as well." The

---

[5] The Court did sustain one objection, the previously mentioned safety valve objection that was already accounted for in the updated PSI.

Court discussed the nature and severity of the offense, noting that meth is an "extremely dangerous. . . . national problem"; that the meth Pena-Sanregre dealt was "very pure"; and that Pena-Sanregre engaged in multiple transactions, "seemed to be pretty adept and knew what he was doing," and had more drugs in his home. The Court explained that this wasn't "a desperate or accidental offense," but was one that spanned multiple months.

The Court also discussed Pena-Sanregre's history and personal characteristics. It found that his lack of criminal history was already accounted for in the Guidelines range as he "received credit for being a zero-point offender" and had "pierce[d] through the minimum mandatory by qualifying for safety valve." It explained that his financial circumstances were "not at all unusual" and that his mental health circumstances were not "extraordinary" enough to "warrant any change" from the Guidelines. The Court then stated that it had done its own research into the median and mean sentences for meth crimes and that the lower sentences "often, if not usually, involve people who are involved in one transaction," not "people who were involved in multiple transactions and had more [drugs] at their home where they were[] living with innocent bystanders." In other words, denying the motion for variance would not create a sentencing disparity because Pena-Sanregre's conduct was different from those who received lower sentences.

The Court denied the motion for downward variance and sentenced Pena-Sanregre to 46 months' imprisonment followed by

two years of supervised release. Pena-Sanregre objected to the sentence. He now timely appeals.

## II.

When reviewing the substantive reasonableness of a sentence we consider the totality of the circumstances under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 56, 128 S. Ct. 586, 600 (2007). The Court abuses its "considerable discretion," *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008), when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (internal quotation marks omitted).

Proper factors to consider at sentencing include, among others, the history and characteristics of the defendant, the nature and seriousness of the crime, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). "A well-founded claim of disparity . . . assumes that apples are being compared to apples," *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009), and thus needs facts specific enough to "gauge" that, *United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011) ("As for [the] argument that there was an unwarranted disparity between [the defendant's] sentence and others who have been convicted of similar . . . crimes elsewhere in the nation, that would be hard to gauge. And we are not convinced that a sentence imposed in this circuit is

subject to a national grade curve."); *see also United States v. Sotis*, 89 F.4th 862, 880 (11th Cir. 2023) (analyzing the facts of multiple cases presented by the defendant, including the circumstances of the crimes committed, to determine whether the defendants in the other cases were truly "similarly situated").

We give "due deference" to the District Court both in considering and weighing the sentencing factors, *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (internal quotation marks omitted), and in deciding whether those factors justify a variance from the Guidelines range, *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). "The District Court is not required to explicitly address each of the [sentencing] factors"; an "acknowledgment" that it has considered the factors and the defendant's arguments is enough. *United States v. Al Jaberi*, 97 F.4th 1310, 1330 (11th Cir. 2024) (citation and internal quotation marks omitted). Further, it need not give all factors equal weight, and it can attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). In other words, we will not reverse a procedurally sound sentence unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [sentencing] factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. McBride*, 511 F.3d 1293, 1297–98 (11th Cir. 2007).

Pena-Sanregre argues that the District Court abused its discretion by failing to consider mitigating factors due significant

weight and by making a clear error of judgment in rejecting the national data that he presented regarding his sentence disparity argument. We disagree.

The District Court considered and weighed the various factors appropriate for sentencing. It discussed Pena-Sanregre's personal characteristics, including his mental health and financial situation; his lack of criminal history; and the nature and circumstances of his crime, including the "extremely dangerous" and "very pure" meth he sold, the fact that he engaged in multiple transactions over multiple months, and the fact that he had more drugs stored in his home where his family also lived. The Court also considered the potential for a sentencing disparity but found that there was none, citing its own research on the matter and the fact that the evidence Pena-Sanregre presented did not distinguish by circumstances. In other words, Pena-Sanregre did not give enough information to show that his disparity argument compared apples to apples, and the Court's own research showed that it was likely Pena-Sanregre was, in fact, comparing apples to oranges. The Court did not commit a clear error in judgment by rejecting Pena-Sanregre's disparity argument.

Furthermore, the Court's overall consideration and balancing of the sentencing factors was proper. Though the Court did not explicitly address each sentencing factor, it did acknowledge that it considered them, along with Pena-Sanregre's arguments. The Court simply weighed the factors different from how Pena-Sanregre wanted, which is not enough to constitute an abuse of

discretion. Indeed, "[t]he decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." *Rosales-Bruno*, 789 F.3d at 1254.

## III.

The sentence imposed by the District Court was substantively reasonable. We affirm.

**AFFIRMED.**